**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DEBRA LAWS,
               *Plaintiff-Appellant,*

               v.

SONY MUSIC ENTERTAINMENT, INC.,
d/b/a EPIC RECORDS, a
Delaware corporation,
               *Defendant-Appellee.*

No. 03-57102

D.C. No.
CV-03-02038-LGB

OPINION

Appeal from the United States District Court
for the Central District of California
Lourdes G. Baird, District Judge, Presiding

Argued and Submitted
September 12, 2005—Pasadena, California

Filed May 24, 2006

Before: Jerome Farris, Ferdinand F. Fernandez, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Bybee

**COUNSEL**

Rickey Ivie and Kendall E. James of Ivie, McNeill & Wyatt, Los Angeles, California, for the appellant.

Russell J. Frackman, Matt J. Railo, and Paul Guelpa of Mitchell, Silberberg & Knupp, LLP, Los Angeles, California, for the appellee.

**OPINION**

BYBEE, Circuit Judge:

Plaintiff Debra Laws ("Laws") brought suit against defendant Sony Music Entertainment, Inc. ("Sony") for misappropriating her voice and name in the song "All I Have" by Jennifer Lopez and L.L. Cool J. The district court found that Sony had obtained a license to use a sample of Laws's recording of "Very Special" and held that Laws's claims for violation of her common law right to privacy and her statutory right of publicity were preempted by the Copyright Act, 17 U.S.C. § 101-1332. We agree with the district court that the Copyright Act preempts Laws's claims, and we affirm.

## I. FACTS AND PROCEEDINGS

In 1979, professional vocalist and recording artist Debra Laws and Spirit Productions ("Spirit") entered into a recording agreement with Elektra/Asylum Records ("Elektra") to produce master recordings of Laws's vocal performances for Elektra. The agreement gave Elektra the "sole and exclusive right to copyright such master recordings" and "the exclusive worldwide right in perpetuity . . . to lease, license, convey or otherwise use or dispose of such master recordings." Elektra also secured the right "to use and to permit others to use your name, the Artist's name . . . likeness, other identification, and

biographical material concerning the Artist . . . in connection with such master recordings." Notwithstanding these provisions, Elektra agreed that "we shall not, without your prior written consent, utilize or authorize others to utilize the Masters in any so-called 'audio-visual' or 'sight and sound' devices intended primarily for home use," and "we or our licensees shall not, without your prior written consent, sell records embodying the Masters hereunder for use as premiums or in connection with the sale, advertising or promotion of any other product or service." In 1981, Laws recorded the song "Very Special," which was released on Laws's album on the Elektra label. Elektra copyrighted the song that same year.

In November 2002, Elektra's agent, Warner Special Products, Inc., entered into an agreement with Sony Music Entertainment, Inc. ("Sony") to grant Sony a non-exclusive license to use a sample of Debra Laws's recording of "Very Special" in the song "All I Have," performed by recording artists Jennifer Lopez and L.L. Cool J. The agreement required Sony to include a credit stating, "Featuring samples from the Debra Laws recording 'Very Special' " in any reproduction. Warner, Elektra's agent, did not seek permission from Laws or Spirit before it released the disc and video, and neither Laws nor Spirit was compensated.

Sony subsequently released a Jennifer Lopez compact disc and music video incorporating brief samples of "Very Special" into her recording of "All I Have." The sampled portions include a segment approximately ten seconds in length at the beginning of "All I Have," and shorter segments repeated in the background throughout the song. Sony included the required credit in the booklet accompanying the compact disc. The song and Lopez's album, "This is Me . . . Then," became a huge commercial success, netting over forty-million dollars. At one time "All I Have" was the number one song in the United States.

In February 2003, Laws brought an action in the Superior Court of California, County of Los Angeles, alleging multiple

claims. The two claims relevant to this appeal were: (1) a common law claim for invasion of privacy for the misappropriation of Laws's name and voice and (2) a claim for misappropriation of Laws's name and voice for a commercial purpose under California Civil Code § 3344. The complaint sought injunctive and monetary relief.

Sony removed the case to the United States District Court for the Central District of California and sought to join Elektra as a necessary party. The court denied the motion. Sony filed a summary judgment motion, which the district court granted, ruling that both of Laws's misappropriation claims were preempted by the Copyright Act. Laws filed a timely appeal.

## II.   STANDARD OF REVIEW

A grant of summary judgment is reviewed de novo. *See Buono v. Norton*, 371 F.3d 543, 545 (9th Cir. 2004). We must view the evidence in the light most favorable to Laws and determine whether there is any genuine issue of material fact and whether the district court properly applied the relevant substantive law. *See Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). Summary judgment may be affirmed on any ground supported by the record. *Id.*

We review de novo whether a federal law preempts a state law. *See Radici v. Associated Ins. Cos.*, 217 F.3d 737, 740 (9th Cir. 2000). The district court's interpretation of state law is also reviewed de novo. *See Rabkin v. Or. Health Scis. Univ.*, 350 F.3d 967, 970 (9th Cir. 2003).

## III.   ANALYSIS

[1] The Copyright Clause of the U. S. Constitution provides that "Congress shall have the Power . . . To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respec-

tive Writings and Discoveries . . . ." U.S. Const. art. I, § 8, cl. 8. Pursuant to this authority, Congress enacted the Copyright Act, 17 U.S.C. § 101-1332, to define and protect the rights of copyright holders. Under the Act, "the owner of copyright . . . has the exclusive rights to do and to authorize" others to display, perform, reproduce or distribute copies of the work, and to prepare derivative works. *Id.* § 106. The copyright is the right to control the work, including the decision to make the work available to or withhold it from the public.

**[2]** Sections 301(a) and (b) of Title 17 describe when the Act preempts legal and equitable rights granted by state common law or statute. Section (a) states:

> On and after January 1, 1978, all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 . . . are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

*Id.* § 301(a). Section (b) states:

> Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to . . . subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103, including works of authorship not fixed in any tangible medium of expression . . . .

*Id.* § 301(b) (2000). Congress explained what the statute made obvious: "[t]he intention of section 301 is to preempt and abolish any rights under the common law or statutes of a State

that are equivalent to copyright and that extend to works, within the scope of the Federal copyright law." H.R. Rep. No. 94-1476, at 130 (1976); *see also Maljack Prods. v. Good-Times Home Video Corp.*, 81 F.3d 881, 888 (9th Cir. 1996).

We have adopted a two-part test to determine whether a state law claim is preempted by the Act. We must first determine whether the "subject matter" of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102[1] and 103.[2] Second, assuming that it does, we

---

[1]§ 102. Subject matter of copyright: In general

(a)   Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include the following categories:

    (1)   literary works;

    (2)   musical works, including any accompanying words;

    (3)   dramatic works, including any accompanying music;

    (4)   pantomimes and choreographic works;

    (5)   pictorial, graphic, and sculptural works;

    (6)   motion pictures and other audiovisual works;

    (7)   sound recordings; and

    (8)   architectural works.

[2]§ 103. Subject matter of copyright: Compilations and derivative works

(a)   The subject matter of copyright as specified by section 102 includes compilations and derivative works, but protection for a work employing preexisting material in which copyright subsists does not extend to any part of the work in which such material has been used unlawfully.

(b)   The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material. The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material.

must determine whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders.[3] *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1003 (9th Cir. 2001).

Laws alleges two causes of action. First, she asserts a claim for protection of her voice, name and likeness under California's common law right of privacy. To sustain this action, Laws must prove: "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Eastwood v. Superior Court*, 198 Cal. Rptr. 342, 347 (Ct. App. 1983), *superseded by statute on other grounds as stated in KNB Enters. v. Matthews*, 92 Cal. Rptr. 2d 713 (Ct. App. 2000); *see also Downing*, 265 F.3d at 1001. Second, Laws asserts a statutory

---

[3]§ 106. Exclusive rights in copyrighted works

Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

(1)  to reproduce the copyrighted work in copies or phonorecords;

(2)  to prepare derivative works based upon the copyrighted work;

(3)  to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

(4)  in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;

(5)  in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and

(6)  in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

misappropriation or "right of publicity" claim under California Civil Code § 3344(a), which provides that:

> Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent . . . shall be liable for any damages sustained by the person or persons injured as a result thereof.

We have observed that "[t]he remedies provided for under California Civil Code § 3344 complement the common law cause of action; they do not replace or codify the common law." *Downing*, 265 F.3d at 1001. Nevertheless, for purposes of our preemption analysis, section 3344 includes the elements of the common law cause of action. *See id.* ("Under section 3344, a plaintiff must prove all the elements of the common law cause of action" plus "knowing use" and "a direct connection between the alleged use and the commercial purpose."). For convenience's sake, we will refer to Laws's claims as "right of publicity" claims.

Sony does not argue that common law privacy actions and statutory claims under section 3344 are preempted generally by section 301; rather, it argues that they are preempted as applied to the facts of this case. We thus turn to (1) whether the subject matter of Laws's right of publicity claims comes within the subject matter of copyright, and (2) whether the rights Laws asserts under California law are equivalent to those created under the Copyright Act.

### A.   *The "Subject Matter" of Copyright*

**[3]** We first consider whether the subject matter of Laws's misappropriation claim is within the subject matter of the Copyright Act. We conclude that it is. Sections 102 and 103

of the Act identify the works of authorship that constitute the "subject matter" of copyright. Section 102 of the Act extends copyright protection to "original works of authorship fixed in any tangible medium of expression . . . from which they can be . . . reproduced, . . . either directly or with the aid of a machine or device." 17 U.S.C. § 102(a). That section defines a "work of authorship" to include "sound recordings." *Id.* § 102(a)(7). "A work is 'fixed' in a tangible medium of expression when its embodiment in a copy or phonorecord, by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." *Id.* § 101. Laws's master recordings held by Elektra are plainly within these definitions.

Laws nevertheless contends that the subject matter of a copyright claim and a right of publicity claim are substantively different. She argues that a copyright claim protects ownership rights to a work of art, while a right of publicity claim concerns the right to protect one's persona and likeness. Sony, by contrast, contends that the subject matter of a right of publicity in one's voice is not different from a copyright claim when the voice is embodied within a copyrighted sound recording. Sony argues that once a voice becomes part of a sound recording in a fixed tangible medium it comes within the subject matter of copyright law.

Our jurisprudence provides strong guidance to the resolution of this question. In *Sinatra v. Goodyear Tire & Rubber Co.*, 435 F.2d 711 (9th Cir. 1970), Nancy Sinatra filed suit against Goodyear Tire on the basis of an advertising campaign that featured "These Boots Are Made for Walkin'," a song that Sinatra made famous. Goodyear Tire had obtained a license from the copyright proprietor for the use of music, lyrics, and arrangement of the composition. Goodyear Tire subsequently used the music and lyrics in its ads, which were sung by unknown vocalists. She alleged the song had taken on

a "secondary meaning" that was uniquely injurious to her. We rejected her claim:

> [A]ppellant's complaint is not that her sound is uniquely personal; it is that the sound in connection with the music, lyrics and arrangement, which made her the subject of popular identification, ought to be protected. But as to these latter copyrightable items she had no rights. Presumably, she was required to obtain permission of the copyright owner to sing "Boots", and to make an arrangement of the song to suit her own tastes and talents. Had she desired to exclude all others from use of the song so that her "secondary meaning" with the song could not be imitated she could have purchased those rights from the copyright proprietor. One wonders whether her voice . . . would have been identifiable if another song had been presented, and not "her song," which unfortunately for her was owned by others and licensed to the defendants.

*Id.* at 716. Although *Sinatra* was decided prior to passage of the modern-day preemption provision in section 301, we nonetheless ruled that the Copyright Act impliedly preempted Sinatra's state law claim. *Id.* at 717-18. We later confirmed this holding in *Midler v. Ford Motor Co.*, 849 F.2d 460, 462 (9th Cir. 1988), when we observed that "[t]o give Sinatra damages for [defendants'] use of the song would clash with federal copyright law."

In *Midler*, recording and performing artist Bette Midler filed suit against an advertising agency and its client when a professional "sound alike" was used to imitate Midler's voice from her hit song "Do You Want to Dance." The agency did not acquire a license to use Midler's recording; instead, it had obtained a license from the song's copyright holder and then attempted to get Midler to do the commercial. When Midler's agent advised the agency that she was not interested, the

agency hired someone who had been a backup singer for Midler and could imitate her voice and style. Indeed, the singer was instructed to sound as much like Bette Midler as possible. We held that Midler's common law misappropriation claim was not preempted by copyright law because the "thing" misappropriated, her voice, was not copyrightable in that instance. We explained:

> Midler does not seek damages for [the defendant's] use of "Do You Want To Dance," and thus her claim is not preempted by federal copyright law. Copyright protects "original works of authorship fixed in any tangible medium of expression." A voice is not copyrightable. The sounds are not "fixed." What is put forward as protectible here is more personal than any work of authorship.

*Id.* at 462 (citation omitted). What Midler sought was relief from an unauthorized vocal imitation for advertising purposes, and that was not the subject of copyright.

**[4]** We subsequently applied *Midler* in *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093 (9th Cir. 1992). The voice of Tom Waits, a professional singer, songwriter, and actor, was imitated and then broadcast in a commercial for Frito-Lay. Waits filed a right of publicity claim under California law. We held that the claim was not preempted by copyright law because it was "for infringement of voice, not for infringement of a copyrightable subject such as sound recording or musical composition." *Id.* at 1100. Thus, the issues in *Waits* were "whether the defendants had deliberately imitated Waits' voice rather than simply his style and whether Waits' voice was sufficiently distinctive and widely known to give him a protectible right in its use. These elements are 'different in kind' from those in a copyright infringement case challenging the unauthorized use of a song or recording." *Id.*

**[5]** In this case, Laws's voice misappropriation claim is plainly different from the claims in *Midler* and *Waits* and falls

within the subject matter of copyright. In contrast to *Midler* and *Waits*, where the licensing party obtained only a license to the song and then imitated the artist's voice, here Sony obtained a license to use Laws's recording itself. Sony was not imitating "Very Special" as Laws might have sung it. Rather, it used a portion of "Very Special" as sung by Debra Laws. *See also Brown v. Ames*, 201 F.3d 654, 658 (5th Cir. 2000) ("The crucial difference between [this case and *Daboub v. Gibbons*, 42 F.3d 285 (5th Cir. 1995)] is that in *Daboub* the basis of the misappropriation claim . . . was the song itself, bringing it within section 301's ambit, whereas here the basis of the misappropriation claim was defendants' use of plaintiffs' names and/or likenesses.").

**[6]** Laws does not dispute Sony's contention that the recording of "Very Special" was a copyrighted sound recording fixed in a tangible medium of expression. Laws's right of publicity claim is based exclusively on what she claims is an unauthorized duplication of her vocal performance of the song "Very Special." Although California law recognizes an assertable interest in the publicity associated with one's voice, we think it is clear that federal copyright law preempts a claim alleging misappropriation of one's voice when the entirety of the allegedly misappropriated vocal performance is contained within a copyrighted medium. Our conclusion is consistent with our holdings in *Midler* and *Waits*, where we concluded that the voice misappropriation claim was not preempted, because the alleged misappropriation was the imitation of the plaintiffs' voices. Neither of those imitations was contained in a copyrighted vocal performance. Moreover, the fact that the vocal performance was copyrighted demonstrates that what is put forth here as protectible is *not* "more personal than any work of authorship." *Midler*, 849 F.2d at 462.

Laws points to two cases for support. Both cases, however, involve photographs used in advertising, and are distinguishable from this case. In *Downing*, 265 F.3d 994, we held that a claim based on the right of publicity was not preempted by

the Copyright Act. In *Downing*, retailer Abercrombie & Fitch was developing a surfing theme—"Surf Nekkid"—for its subscription catalog. Abercrombie published a photo of the plaintiffs, who were participants in a surf championship in Hawaii in 1965. Abercrombie ran the photo, which it had purchased from the photographer (who held the copyright), and it identified the plaintiffs by name. Abercrombie went well beyond mere republication of the photograph. Without obtaining plaintiffs' consent to use their names and images, it also offered t-shirts exactly like those worn by the plaintiffs in the photo. We noted that the photograph itself was within the subject matter protected by the Copyright Act. But Abercrombie had not merely published the photograph. Rather, it published the photo in connection with a broad surf-themed advertising campaign, identified the plaintiffs-surfers by name, and offered for sale the same t-shirts worn by the plaintiffs in the photo. By doing so, it had suggested that the surfers had endorsed Abercrombie's t-shirts. Accordingly, we concluded that "it is not the publication of the photograph itself, as a creative work of authorship, that is the basis for [plaintiffs'] claims, but rather, it is the use of the [plaintiffs'] likenesses and their names pictured in the published photograph." *Id.* at 1003; *see also Brown*, 201 F.3d at 656-57 (no preemption where the record company used the names and likenesses of musicians, song writers, and producers on compact disks, tapes, catalogs and posters). We thus concluded that the claim was not within the subject matter of copyright because "[a] person's name or likeness is not a work of authorship within the meaning of 17 U.S.C. § 102." *Downing*, 265 F.3d at 1004.

Laws also relies on a second case, *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905 (7th Cir. 2005), in which the Seventh Circuit held that a claim under the Illinois Right of Publicity Act was not preempted by the Copyright Act. Toney was a model who had posed for photographs used to promote hair-care products on packaging and in national advertisements. Defendants owned the copyright for the photograph of Toney that was used, and had a right to use it from November 1995 to

November 2000; any other use would be negotiated separately. In apparent violation of their understanding, defendants continued to use the photographs in their advertising beyond 2000. Toney alleged that this use violated her right of publicity under Illinois law. The Seventh Circuit concluded that

> Toney's identity is not fixed in a tangible medium of expression. There is no "work of authorship" at issue in Toney's right of publicity claim. A person's likeness—her persona—is not authored and it is not fixed. The fact that an image of the person might be fixed in a copyrightable photograph does not change this. . . . The fact that the photograph itself could be copyrighted, and that defendants owned the copyright to the photograph that was used, is irrelevant to the [right of publicity] claim. . . . The defendants did not have her consent to continue to use the photograph . . . .

*Id.* at 910. The fact that the photograph was copyrighted could not negate the fact that Toney had reserved artistic control over her image for any period beyond the contractual time frame. The Seventh Circuit concluded that Toney's claim was not preempted.[4]

In contrast, Jennifer Lopez's song "All I Have" incorporated samples of Deborah Laws's "Very Special" and gave her the attribution negotiated by Elektra and Sony. Sony did

---

[4]*Toney* differs from this case in a significant way: Toney brought her right of publicity claim against L'Oreal U.S.A., Inc., the Wella Corp., and Wella Personal Care of North America, Inc., which each at some point held the copyright and had agreed not to use Toney's likeness after 2000. The facts of this case would be analogous to *Toney* if Laws had brought her right of publicity claim against Elektra, which holds the copyright to the song and may have agreed to licensing limitations. We express no views on the correctness of *Toney* or its application to any claims against Elektra.

not use Laws's image, name, or the voice recording in any promotional materials. Her state tort action challenges control of the artistic work itself and could hardly be more closely related to the subject matter of the Copyright Act.

We find more to the point, and quite persuasive, the California Court of Appeal's decision in *Fleet v. CBS, Inc.*, 58 Cal. Rptr. 2d 645 (Ct. App. 1996). There, defendant CBS owned the exclusive rights to distribute a motion picture in which plaintiffs performed. A third party who financed the operation of the movie refused to pay plaintiffs their previously agreed-to salaries. Plaintiffs brought suit against CBS alleging, *inter alia*, that by airing the motion picture using their names, pictures, and likenesses without their consent, CBS had violated their statutory right of publicity. The Court of Appeal held that the Copyright Act preempted the action. As the court observed, "it was not merely [plaintiffs'] likenesses which were captured on film—it was their dramatic performances which are . . . copyrightable." *Id.* at 651. "[O]nce [plaintiffs'] performances were put on film, they became 'dramatic work[s]' 'fixed in [a] tangible medium of expression . . . .' At that point, the performances came within the scope or subject matter of copyright law protection," and the claims were preempted. *Id.* at 650; *see also Downing*, 265 F.3d at 1005 n.4 ("In *Fleet*, the plaintiffs were actors in a copyrighted film. The claims of the plaintiffs were based on their dramatic performance in a film CBS sought to distribute. . . . This is clearly distinguishable from this case where the Appellants' claim is based on the use of their names and likenesses, which are not copyrightable."). In effect, the plaintiffs' right of publicity claim was a question of control over the distribution, display or performance of a movie CBS owned. Since CBS's use of plaintiffs' likenesses did not extend beyond the use of the copyrighted material it held, there was no right of publicity at issue, aside from the actors' performances. Had the court held otherwise, each actor could claim that any showing of the film violated his right to control his image and persona.

Laws makes much of the fact that she possessed a right of first refusal in all future uses of "Very Special" under the original production agreement with Elektra. She contends that this right expressly gives her control over the use of her name and voice in connection with any use of "Very Special." She also contends that "[i]f the copyright holder itself, Elektra/Asylum, was not ceded such rights, then as a matter of law its licensee does not possess those rights." In effect, Laws contends that her contractual reservation gives her an interest in the copyright and, concomitantly, renders Elektra's copyright partially subject to her control.

**[7]** We express no view as to the effect of Laws's reservation in the production agreement and no view as to any remedies that Laws may have against Elektra. Whether or not the two parties contracted around the actual use of a copyright does not affect our preemption analysis. To the extent that Laws has enforceable, contractual rights regarding the use of Elektra's copyright, her remedy may lie in a breach of contract claim against Elektra for licensing "Very Special" without her authorization. *See Grosso v. Miramax Film Corp.*, 383 F.3d 965, 968 (9th Cir. 2004).[5]

**[8]** In sum, we hold that Laws's cause of action is within the subject matter of copyright.

B.   *Equivalent Rights*

**[9]** We must next determine whether the rights she asserts under California law are equivalent to the rights protected under the Copyright Act. We conclude that they are. In *Del Madera Props. v. Rhodes & Gardner*, 820 F.2d 973 (9th Cir. 1987), *overruled on other grounds*, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), we outlined the test for determining

---

[5]Counsel represented to this Court during oral argument that it had in fact filed a breach of contract claim in state court.

whether state rights were "equivalent" to those under the Copyright Act:

> To satisfy the "equivalent rights" part of the preemption test . . . the . . . alleged misappropriation . . . must be equivalent to rights within the general scope of copyright as specified by section 106 of the Copyright Act. Section 106 provides a copyright owner with the exclusive rights of reproduction, preparation of derivative works, distribution, and display. To survive preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights. The state claim must have an extra element which changes the nature of the action.

*Id.* at 977 (quotations and citations omitted). In *Del Madera Properties*, the plaintiff alleged that the defendants had allegedly misappropriated a copyrighted land map to plan a new development. Plaintiff advanced an unfair competition claim and argued that it was qualitatively different from copyright because the unfair competition claim required the breach of a fiduciary duty, an element not required under copyright. We squarely rejected Del Madera's argument:

> This argument . . . does not add any "extra element" which changes the nature of the action. The argument is constructed upon the premise that the documents and information . . . belonged to Del Madera and were misappropriated by the defendants. Del Madera's ownership of this material, and the alleged misappropriation by the defendants, are part and parcel of the copyright claim.

*Id.*; *see also Harper & Row, Publishers, Inc. v. Nation Enters.*, 501 F. Supp. 848, 853-54 (S.D.N.Y. 1980) ("[T]he contract claim is redundant because the additional elements . . . do not afford plaintiff rights that are 'different in kind'

from those protected by the copyright laws."), *rev'd on other grounds*, 471 U.S. 539 (1985).

**[10]** Laws contends that her right of publicity claim under California Civil Code § 3344 requires proof of a use for a "commercial purpose," which is not an element of a copyright infringement claim. She concedes that a right which is the "equivalent to copyright" is one that is infringed by the mere act of reproduction; however, she argues that her claim is not based on Sony's mere act of reproduction, but "is for the use of . . . Laws'[s] voice, the combination of her voice with another artist, and the commercial exploitation of her voice and name in a different product without her consent."

Sony argues that Laws's claims are based exclusively on the reproduction of "Very Special" in "All I Have." It asserts that the rights protected under Laws's voice misappropriation claim are not qualitatively different from the rights protected under copyright law because the sole basis for her voice misappropriation claim is the unauthorized reproduction of her copyrighted vocal performance.

**[11]** The essence of Laws's claim is, simply, that she objects to having a sample of "Very Special" used in the Jennifer Lopez-L.L. Cool J recording. But Laws gave up the right to reproduce her voice—at least insofar as it is incorporated in a recording of "Very Special"—when she contracted with Elektra in 1981 and acknowledged that Elektra held the "sole and exclusive right to copyright such master recordings," including the right "to lease, license, convey or otherwise use or dispose of such master recordings." At that point, Laws could have either retained the copyright, or reserved contractual rights in Elektra's use of the recording. Indeed, Laws claims that the latter is precisely what she did. But if Elektra licensed "Very Special" to Sony in violation of its contract with Laws, her remedy sounds in contract against Elektra, not in tort against Sony.

**[12]** The mere presence of an additional element ("commercial use") in section 3344 is not enough to qualitatively distinguish Laws's right of publicity claim from a claim in copyright. The extra element must transform the nature of the action. Although the elements of Laws's state law claims may not be identical to the elements in a copyright action, the underlying nature of Laws's state law claims is part and parcel of a copyright claim. *See Fleet*, 58 Cal. Rptr. 2d at 649. Under the Act, a copyright owner has the exclusive right "to reproduce the copyrighted work." 17 U.S.C. § 106(1). Laws's claims are based on the premise that Sony reproduced a sample of "Very Special" for commercial purposes without her permission. But Sony obtained a limited license from the copyright holder to use the copyrighted work for the Lopez album. The additional element of "commercial purpose" does not change the underlying nature of the action. *See Motown Record Corp. v. George A. Hormel & Co.*, 657 F. Supp. 1236, 1239-40 (C.D. Cal. 1987).

## IV.   CONCLUSION

Both copyright and the right of publicity are means of protecting an individual's investment in his or her artistic labors. As the Court said of copyright:

> The economic philosophy behind the clause empowering Congress to grant patents and copyrights is the conviction that encouragement of individual effort by personal gain is the best way to advance public welfare through the talents of authors and inventors in "Science and useful Arts." Sacrificial days devoted to such creative activities deserve rewards commensurate with the services rendered.

*Mazer v. Stein*, 347 U.S. 201, 219 (1954). Similarly, the Supreme Court has said that the

> right of publicity . . . rests on more than a desire to compensate the performer for the time and effort

invested in his act; the protection provides an economic incentive for him to make the investment required to produce a performance of interest to the public.

*Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562, 576 (1977). On the one hand, we recognize that the holder of a copyright does not have "a license to trample on other people's rights." *See* J. Thomas McCarthy, The Rights of Publicity and Privacy § 11:60, at 788 (2d ed. 2005). On the other hand, however, the right of publicity is not a license to limit the copyright holder's rights merely because one disagrees with decisions to license the copyright. We sense that, left to creative legal arguments, the developing right of publicity could easily supplant the copyright scheme. This, Congress has expressly precluded in § 301. Were we to conclude that Laws's voice misappropriation claim was not preempted by the Copyright Act, then virtually every use of a copyrighted sound recording would infringe upon the original performer's right of publicity. We foresaw this distinct possibility in *Sinatra*:

> An added clash with the copyright laws is the potential restriction which recognition of performers' "secondary meanings" places upon the potential market of the copyright proprietor. If a proposed licensee must pay each artist who has played or sung the composition and who might therefore claim unfair competition-performer's protection, the licensee may well be discouraged to the point of complete loss of interest.

*Sinatra*, 435 F.2d at 718. It is hard to imagine how a copyright would remain meaningful if its licensees were potentially subject to suit from any performer anytime the copyrighted material was used.

To be clear, we recognize that not every right of publicity claim is preempted by the Copyright Act. Our holding does

not extinguish common law or statutory rights of privacy, publicity, and trade secrets, as well as the general law of defamation and fraud (or any other similar causes of action), so long as those causes of action do not concern the subject matter of copyright and contain qualitatively different elements than those contained in a copyright infringement suit. Elektra copyrighted Laws's performance of "Very Special" and licensed its use to Sony. If Laws wished to retain control of her performance, she should (and may) have either retained the copyright or contracted with the copyright holder, Elektra, to give her control over its licensing. In any event, her remedy, if any, lies in an action against Elektra, not Sony.

[13] We therefore agree with the district court's conclusion that Laws's right of publicity claims are preempted by the Copyright Act. The judgment is

AFFIRMED.