**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LARRY MONTZ; DAENA SMOLLER,
        *Plaintiffs-Appellants,*

v.

PILGRIM FILMS & TELEVISION, INC.;
NBC UNIVERSAL, INC.; CRAIG
PILIGIAN; JASON CONRAD HAWES;
UNIVERSAL TELEVISION NETWORKS,
        *Defendants-Appellees.*

No. 08-56954

D.C. No.
2:06-cv-07174-
FMC-MAN

OPINION

Appeal from the United States District Court
for the Central District of California
Florence-Marie Cooper, District Judge, Presiding

Argued and Submitted
May 4, 2010—Pasadena, California

Filed June 3, 2010

Before: Diarmuid F. O'Scannlain and Richard C. Tallman,
Circuit Judges, and Joan Humphrey Lefkow,
District Judge.*

Opinion by Judge O'Scannlain

---

  *The Honorable Joan Humphrey Lefkow, United States District Judge
for the Northern District of Illinois, sitting by designation.

**COUNSEL**

Howard B. Miller, of Girardi Keese, Los Angeles, California, argued the cause for the plaintiffs-appellants. Joseph C. Gjonola, of Girardi Keese, Los Angeles, California, filed the briefs. Graham B. LippSmith, of Girardi Keese, Los Angeles, California, was also on the briefs.

Gail Migdal Title, of Katten Muchin Rosenman LLP, Los Angeles, California, argued the cause for the defendants-appellees. Joel R. Weiner, of Katten Muchin Rosenman LLP, Los Angeles, California, filed a brief. Gail Migdal Title and Gloria C. Franke, of Katten Muchin Rosenman LLP, Los Angeles, California, were also on the brief.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We consider whether federal copyright law preempts state-law claims alleging the unauthorized use of screenplays, videos, and other materials in the production of a cable television series.

I

A

In November 2006, plaintiffs Larry Montz, a parapsychologist, and Daena Smoller, a publicist, filed a complaint in federal district court. They claimed that in 1981, Montz conceived of the concept for a new reality television program fea-

turing a team of "paranormal investigators." As allegedly envisioned by Montz, each hour-long episode would follow the team's members to a different real-world location, where they would use magnetometers, infrared cameras, and other devices to investigate (and occasionally debunk) reports of paranormal activity.

The complaint alleges that between 1996 and 2003, the plaintiffs presented screenplays, videos, and other materials relating to their proposed show to representatives of NBC Universal, Inc., and the Sci-Fi Channel (now the Syfy Channel), "for the express purpose of offering to partner . . . in the production, broadcast and distribution of the Concept." The representatives were allegedly not interested in the concept for the show. According to the complaint, however, NBC Universal subsequently partnered with Craig Piligian and Pilgrim Films & Television, Inc., to produce a series on the Sci-Fi Channel based on the plaintiffs' materials. The show, called *Ghost Hunters*, stars Jason Hawes as the leader of a team of investigators who travel across the country to study paranormal activity.

The plaintiffs brought various causes of action against NBC Universal, Pilgrim Films, Piligian, Hawes, and ten unknown other defendants. The complaint alleges that the defendants engaged in unauthorized use of the plaintiffs' materials, in violation of their exclusive rights under federal copyright law. In addition, it alleges several state-law claims, two of which are relevant here: (1) that "by producing and broadcasting" *Ghost Hunters*, the defendants breached an "implied agreement not to disclose, divulge or exploit the Plaintiffs' ideas and concepts without the express consent of the Plaintiffs, and to share with the Plaintiffs . . . the profits and credit for their idea and concepts"; and (2) that the defendants breached the plaintiffs' confidence "[b]y taking the Plaintiffs' novel ideas and concepts, exploiting those ideas and concepts, and profiting therefrom to the Plaintiffs' exclusion."

B

In April 2007, the defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The district court granted in part and denied in part the defendants' motion in July 2007. The court concluded that the complaint alleged facts sufficient to state a federal copyright claim, but that federal copyright law preempted the plaintiffs' state-law breach-of-implied-contract and breach-of-confidence claims. The court dismissed the state-law claims with prejudice and without leave to amend.

In August 2008, the plaintiffs amended their copyright claim and added Universal Television Networks as a defendant. The parties, however, subsequently stipulated to voluntary dismissal of the amended copyright claim with prejudice, and the district court dismissed the claim accordingly. With no remaining claims to be adjudicated, the district court entered final judgment in favor of the defendants.

II

**[1]** The plaintiffs timely appeal the dismissal of their state-law breach-of-implied-contract and breach-of-confidence claims. In their view, the district court erred in ruling their claims preempted by 17 U.S.C. § 301(a), which provides:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 . . . are governed exclusively by this title. . . . [N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

By its terms, § 301(a) sets forth two conditions for preemption. First, the state-law claim must assert rights in "works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by [17 U.S.C. §§ 102 and 103]." Second, the rights asserted under state law must be "equivalent" to the exclusive rights of copyright owners specified by 17 U.S.C. § 106. A state-law claim is preempted under § 301(a) only if both conditions are satisfied. *See Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137-38 (9th Cir. 2006).

## A

We begin with the plaintiffs' breach-of-implied-contract claim. The district court ruled that the claim—which asserts rights in screenplays, videos, and other tangible media—comes within the "subject matter of copyright" and thus satisfies the first condition for preemption. The plaintiffs do not challenge this ruling on appeal. Our inquiry is therefore limited to whether the claim satisfies the second condition—that is, whether the rights asserted under the claim are "equivalent" to the exclusive rights of copyright owners under § 106.

**[2]** Section 106 confers upon copyright owners the exclusive rights to reproduce, to distribute, and to display original works of authorship, and to prepare works derived from the originals. 17 U.S.C. § 106. Section 106 also gives copyright owners the exclusive right to authorize such reproduction, distribution, display, and preparation. *Id.* "To survive preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights. The state claim must have an extra element which changes the nature of the action." *Laws*, 448 F.3d at 1143 (internal quotation marks omitted).

**[3]** The plaintiffs' breach-of-implied-contract claim consists of the following allegations: that "[t]he Plaintiffs presented their ideas for the 'Ghost Hunter' Concept to the

Defendants[ ] in confidence . . . for the express purpose of offering to partner with the Defendants in the production, broadcast and distribution of the Concept"; that "by accepting the Plaintiffs' disclosure of its concept," the defendants agreed that they "would not disclose, divulge or exploit the Plaintiffs' ideas and concepts without compensation and without obtaining the Plaintiffs' consent"; and that "by producing and broadcasting the Concept," "[t]he Defendants breached their implied agreement not to disclose, divulge or exploit the Plaintiffs' ideas and concepts without the express consent of the Plaintiffs, and to share with the Plaintiffs . . . the profits and credit for their idea and concepts." The gravamen of the claim is that the defendants used the plaintiffs' work, without authorization, to create (and then profit from) a new television program. The rights asserted by the plaintiffs under the implied contract are thus equivalent to the rights of copyright owners under § 106—namely, the exclusive rights to use and to authorize use of their work.

The plaintiffs counter that *Grosso v. Miramax Film Corp.*, 383 F.3d 965 (9th Cir. 2004), compels a different conclusion. *Grosso* involved a particular type of breach-of-implied-contract claim, the elements of which the California Supreme Court elucidated in *Desny v. Wilder*, 299 P.2d 257 (Cal. 1956). To state a *Desny* claim, the plaintiff must plead that he "prepared the work [at issue], disclosed the work to the offeree for sale, and did so under circumstances from which it could be concluded that the offeree voluntarily accepted the disclosure knowing the conditions on which it was tendered and the reasonable value of the work." *Grosso*, 383 F.3d at 967 (citing *Faris v. Enberg*, 158 Cal. Rptr. 704, 709 (Ct. App. 1979)). "[M]irror[ing] the requirements of *Desny*," the complaint in *Grosso* alleged that the plaintiff had given the defendants an idea for a movie "with the understanding and expectation . . . that [he] would be reasonably compensated for its use by Defendants." *Id.* (internal quotation marks omitted). We concluded that the defendants' "implied promise to pay" for use of the plaintiff's idea constituted "an 'extra ele-

ment' for preemption purposes." *Id.* at 968. Accordingly, we held that the plaintiff's *Desny* claim survived preemption under § 301. *Id.*

Contrary to the plaintiffs' assertion, however, the present case is distinguishable from *Grosso*. There, the plaintiff allegedly disclosed his idea to the defendants for the express purpose of offering it for sale; the defendants allegedly accepted the offer and, in return, made an implied promise *to pay* for use of the idea. Here, by contrast, the plaintiffs allegedly disclosed their work to the defendants "for the express purpose of offering to partner . . . in the production, broadcast and distribution of the Concept"; the defendants allegedly rejected the offer but, in return, made an implied promise "*not to disclose, divulge or exploit* the Plaintiffs' ideas and concepts without the *express consent* of the Plaintiffs." (Emphases added.) The nature of the implied contracts in the two cases is thus fundamentally different. Whereas the breach of the alleged agreement in *Grosso* violated the plaintiff's right to payment on a sale, the breach of the alleged agreement in this case violated the plaintiffs' exclusive rights to use and to authorize use of their work—rights equivalent to those of copyright owners under § 106.

The plaintiffs nevertheless insist that their breach-of-implied-contract claim contains an "extra element" that distinguishes it from a copyright claim. They contend that "by producing and broadcasting" *Ghost Hunters*, the defendants violated not only their exclusive rights to use and to authorize use of their work, but also their right to receive a share of "the profits and credit for their idea and concepts." According to them, the right to receive a share of the profits and credit is one beyond the scope of § 106.

**[4]** The mere mention of such a right, however, is not enough to "qualitatively distinguish" the plaintiffs' breach-of-implied-contract claim from a copyright claim. *Laws*, 448 F.3d at 1144. The plaintiffs expected to receive a share of the

profits and credit for use of their work, but only because they expected, as any copyright owner would, that their work would not be used without their permission. The text of the complaint confirms as much:

> The Plaintiffs presented their ideas for the "Ghost Hunter" Concept to the Defendants[ ] in confidence, pursuant to the custom and practice of the entertainment industry, for the express purpose of offering to partner with the Defendants in the production, broadcast and distribution of the Concept. *Accordingly*, the Plaintiffs justifiably expected to receive a share of any profits and credit that might be derived from the exploitation of [their] ideas and concepts for the Concept.

(Emphasis added.) As this paragraph of the complaint makes clear, the plaintiffs' expectation of profits and credit was premised on the fact that they would retain control over their work, whether in partnership with the defendants or not. The plaintiffs' right to receive a share of the profits and credit is thus merely derivative of the rights fundamentally at issue: the plaintiffs' exclusive rights to use and to authorize use of their work. The plaintiffs' claim is "part and parcel of a copyright claim," and the presence of a right to receive a share of the profits and credit does not "transform the nature of the action." *Laws*, 448 F.3d at 1144. We therefore hold that the plaintiffs' breach-of-implied-contract claim is preempted by federal copyright law, and that the district court properly dismissed the claim.

B

**[5]** As to the breach-of-confidence claim, the plaintiffs do not challenge the district court's conclusion that it satisfies the first condition for preemption. The only question before us is whether the rights asserted under the claim are "equivalent"

to the exclusive rights of copyright owners under § 106. We are satisfied that they are.

**[6]** The complaint contends that "the Plaintiffs' disclosure of their ideas and concepts [was] strictly confidential," and that "[b]y taking the Plaintiffs' novel ideas and concepts, exploiting those ideas and concepts, and profiting therefrom to the Plaintiffs' exclusion, the Defendants breached their confidential relationship with the Plaintiffs." Such claim simply echoes the allegations of the breach-of-implied-contract claim, which we have already deemed preempted. Indeed, the alleged breach of confidence stems from an alleged violation of the very rights contained in § 106—the exclusive rights of copyright owners to use and to authorize use of their work. Given that the plaintiffs' breach-of-confidence claim is not qualitatively different from a copyright claim, we conclude that it was also properly dismissed.

### III

Finally, the plaintiffs argue that even if the district court properly dismissed their state-law claims, it should not have denied leave to amend them. "We review strictly a district court's exercise of discretion denying leave to amend." *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988).

**[7]** The proceedings in the district court were governed by former Federal Rule of Civil Procedure 15(a), which provided that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served." We have previously said that "[a] motion to dismiss is not a 'responsive pleading' within the meaning of the Rule." *Breier v. N. Cal. Bowling Proprietors' Ass'n*, 316 F.2d 787, 789 (9th Cir. 1963). Nevertheless, we have held that in granting a motion to dismiss before a responsive pleading is served, a district court may cut off a party's right to amend as a matter of course if "the allegation of other facts consistent with the challenged pleading could not possibly cure the

deficiency." *Albrecht*, 845 F.2d at 195 (internal quotation marks omitted).[1]

**[8]** In this case, the district court dismissed the plaintiffs' state-law claims without leave to amend before a responsive pleading was served. Although the district court did not make written findings in support of its denial of leave to amend, no such findings were necessary because the court's decision makes clear that no allegation of other facts consistent with the complaint could possibly cure the deficiency. *See Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622-23 (9th Cir. 2004). As the district court correctly recognized, the complaint is deficient because it alleges state-law claims that are preempted by federal copyright law. This deficiency can plausibly be cured only by adding an "extra element" to each claim that "transform[s] the nature of the action." *Laws*, 448 F.3d at 1144. The plaintiffs cannot effect such a transformation, however, without alleging facts inconsistent with the challenged complaint. To state a viable *Desny* claim, for example, the plaintiffs would have to allege that they offered their work for sale. *See Grosso*, 383 F.3d at 967. But such an allegation would be contrary to the challenged complaint, which states that they made an offer only of partnership in the "production, broadcast and distribution of the Concept." We are therefore satisfied that the district court did not abuse its discretion by denying the plaintiffs leave to amend.

---

[1]Amendments to Rule 15(a) took effect on December 1, 2009, and apply to pending proceedings "insofar as just and practicable." Order, 2009 U.S. Order 17 (Mar. 26, 2009). Rule 15(a), as amended, provides that a party's right to amend as a matter of course terminates "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(B) (2010). Thus, under the amended rule, the plaintiffs' right to amend as a matter of course terminated in May 2007, before the district court's ruling on the defendants' Rule 12(b)(6) motion. It matters not which version of the rule we apply here, however, because the question under both versions is ultimately the same: whether the district court abused its discretion by denying leave to amend.

IV

For the foregoing reasons, the judgment of the district court is

**AFFIRMED.**