O’SCANNLAIN, Circuit Judge, Joined by GOULD, TALLMAN and BEA, Circuit Judges,
dissenting:
Montz does not claim to have sold his rights as a copyright owner. To the contrary, he alleges that he retained those rights, and that Pilgrim implicitly prom *982 ised not to use or to disclose his ideas without his consent. As the district court properly held, an action to enforce a promise not to use or to disclose ideas embodied in copyrighted material without authorization asserts rights equivalent to those protected by the Copyright Act. Accordingly, the district court’s determination that the Copyright Act preempts Montz’s claims should be affirmed. I respectfully dissent from the Court’s opinion to the contrary. I
A state law claim is preempted if the rights asserted under state law “come within the subject matter of copyright,” as described in 17 U.S.C. §§ 102 and 103, and are “equivalent” to the exclusive rights of copyright owners specified in 17 U.S.C. § 106. 17 U.S.C. § 301(a); see also Laws v. Sony Music Entm’t, Inc., 448 F.3d 1134, 1137 (9th Cir.2006). The district court ruled that both of Montz’s state law claims — which assert rights to ideas embodied in screenplays, videos, and other tangible media — come within the “subject matter of copyright.” As the en banc court agrees with this ruling, I shall address only the second prong: whether Montz’s claims are “equivalent” to the exclusive rights afforded to copyright owners by section 106.[1]
A
Montz’s breach-of-implied-contract claim consists of the following allegations: (1) “[t]he Plaintiffs presented their ideas for the ‘Ghost Hunter’ Concept to the Defendants[ ] in confidence, pursuant to the custom and practice of the entertainment industry, for the express purpose of offering to partner with the Defendants in the production, broadcast and distribution of the Concept,” (2) “by accepting the Plaintiffs’ disclosure of its concept,” the defendants agreed that they “would not disclose, divulge or exploit the Plaintiffs’ ideas and concepts without compensation and without obtaining the Plaintiffs’ consent,” (3) “the Plaintiffs justifiably expected to receive a share of any profits and credit that might be derived from the exploitation of [their] ideas and concepts,” and (4) “by producing and broadcasting the Concept,” “[t]he Defendants breached their implied agreement not to disclose, divulge or exploit the Plaintiffs’ ideas and concepts without the express consent of the Plaintiffs, and to share with the Plaintiffs ... the profits and credit for their idea and concepts.” (emphasis added).
To distinguish itself from a copyright claim, a state law claim “must protect rights which are qualitatively different from the copyright rights.” Laws, 448 F.3d at 1143 (internal quotation marks omitted). This requires that the state claim have an “extra element which transforms the nature of the action.” Id. (internal quotation marks omitted). Montz’s breach-of-implied-contract claim fails this test.
Under section 106, a copyright owner has the exclusive rights to reproduce, to distribute, and to display the copyrighted work, as well as to prepare derivative works based on the copyrighted work. 17 U.S.C. § 106. Section 106 also provides a copyright owner with the exclusive rights *983 to authorize such reproduction, distribution, display, and preparation. Id. Montz alleges that “by producing and broadcasting” Ghost Hunters, “[t]he Defendants breached their implied agreement not to disclose, divulge or exploit the Plaintiffs’ ideas and concepts without the[ir] express consent.” In other words, Montz asserts that Pilgrim produced and broadcast a television program derived from Montz’s screenplays, video, and other materials without authorization. These rights are equivalent to the rights of copyright owners under section 106 — namely, the exclusive rights to authorize reproduction, distribution, and display of original works, and to authorize preparation of derivative works. See Del Madera Props. v. Rhodes & Gardner, Inc., 820 F.2d 973, 977 (9th Cir.1987), overruled on other grounds by Fogerty v. Fantasy, Inc., 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) (“[A]n implied promise not to use or copy materials within the subject matter of copyright is equivalent to the protection provided by section 106 of the Copyright Act.”).
B
With respect, I suggest the majority does not appreciate the significance of Montz’s refusal to authorize Pilgrim to use the ideas embodied in his materials.[2] This is not the same as authorizing Pilgrim to use his ideas so long as it pays him. A copyright is not just the right to receive money upon the use of a work; it is “the right to control the work, including the decision to make the work available to or withhold it from the public.” Laws, 448 F.3d at 1137; see also eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 392, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006) (“[A] copyright holder possesses the right to exclude others from using his property.” (internal quotation marks omitted)). Indeed, because a copyright gives its owner a property right — not merely a liability right — injunctive relief for copyright infringement is provided for by Congress, and is routinely granted by courts. See 17 U.S.C. § 502; Elvis Presley Enters., Inc. v. Passport Video, 349 F.3d 622, 627 (9th Cir.2003).
To be sure, many copyright owners choose to sell the right to control their work. But a copyright holder may turn down money — or accept less money — in exchange for retaining more control over, and more involvement with, his work. For instance, Matt Damon and Ben Affleck famously refused to sell the rights to Good Will Hunting until they were promised starring roles in the film. See Bernard Weinraub, The Script is Modest, But Not the Buzz, N.Y. Times, Nov. 20, 1997, at El. Such is the case here: Montz did not offer to sell his idea to Pilgrim; he offered “to partner” with Pilgrim in the show’s “production and distribution.” And when that offer was refused, Montz received an implied promise that Pilgrim would not use the ideas embodied in his materials without his consent.
Thus, Montz does not claim to have sold the rights to the ideas embodied in his materials, as did the plaintiff in Grosso v. Miramax Film Corp., 383 F.3d 965 (9th *984 Cir.2004). Grosso involved a particular type of breach-of-implied-contract claim, the elements of which the California Supreme Court elucidated in Desny v. Wilder, 46 Cal.2d 715, 299 P.2d 257 (1956). To state a Desny claim, the plaintiff must plead that he “prepared the work, disclosed the work to the offeree for sale, and did so under circumstances from which it could be concluded that the offeree voluntarily accepted the disclosure knowing the conditions on which it was tendered and the reasonable value of the work.” Grosso, 383 F.3d at 967.
“[M]irror[ing] the requirements of Desny,” the complaint in Grosso alleged the plaintiff had submitted a movie script to the defendants “with the understanding and expectation ... that [he] would be reasonably compensated for its use by Defendants.” Id. (internal quotation marks omitted). We concluded that the defendants’ “implied promise to pay” for use of the idea embodied in the script constituted “an ‘extra element’ for preemption purposes.” Id. at 968. The subject of the implied contract, then, was the sale of the plaintiffs idea. The plaintiff asserted that he had “disclosed [his] work to the offeree for sale,” and that, by using the ideas embodied in his work, the offeree had implicitly agreed to pay for it. Id. at 967.
By contrast, Montz alleges that he retained his rights as a copyright owner. Montz “presented [his] ideas for the ‘Ghost Hunter’ Concept to the Defendants[ ] ... for the express purpose of offering to partner with the Defendants in the production, broadcast and distribution of the Concept.” Pilgrim rejected the offer but allegedly promised implicitly not to use Montz’s ideas “without [his] consent.” Therefore, according to the complaint, Pilgrim did not promise to pay for the use of Montz’s ideas. Rather, it promised (implicitly) to respect Montz’s rights to the production, distribution, and broadcast of his work. Put differently, it promised to respect the rights afforded to Montz by the Copyright Act.
The majority asserts that there is “no meaningful difference between the conditioning of use on payment in Grosso and conditioning use in this case on the granting of a partnership interest in the proceeds of the production.” Maj. Op. at 977. This was never the issue. The Montz panel did not rely on the difference between seeking compensation in the form of a lump sum versus a percentage of profits. Rather, it relied on the difference between authorizing the use of one’s work in exchange for money, and not authorizing the use of one’s work at all. See Montz v. Pilgrim Films & Television, Inc., 606 F.3d 1153, 1158 (9th Cir.2010) (“Whereas the breach of the alleged agreement in Grosso violated the plaintiff’s right to payment on a sale, the breach of the alleged agreement in this case violated the plaintiffs’ exclusive rights to use and to authorize use of their work.... ”). I am mindful of Montz’s allegation that he expected to receive compensation and credit if his ideas were ever used. But this fact alone is not sufficient to “transform the nature of the action.” Laws, 448 F.3d at 1144. Montz expected to receive compensation and credit for use of his work only because he also expected — as any copyright owner would — that his work would not be used without authorization. Far from being “transformative,” entitlement to compensation and credit under the implied contract was merely the result of the contract’s prohibition against unauthorized use of Montz’s work. There is thus nothing in the complaint that “qualitatively distinguishes]” the breach-of-implied-contract claim from a copyright claim.[3] Id.
*985 c
The majority insists that by limiting implied contract protection to those who authorize the use of their work in exchange for consideration, “the dissent misses the point.” Maj. Op. at 981. But it is not clear just what point I am missing. If the point is to fill “the gap that would otherwise exist between state contract law and copyright law,” id. at 981, then I suggest that a focus on authorization is entirely appropriate. Where a copyright owner authorizes the use of his work, but does not receive the consideration he was promised, he has a contract claim; where a copyright owner does not authorize the use of his work, but, nonetheless, someone uses it to produce a substantially similar work, he has a copyright claim.
If, however, “the point” is to provide greater protection against the unauthorized use of copyrighted material than is afforded under the Copyright Act, then it is a point I am glad to miss, as it is inconsistent with the objectives of Congress. The Copyright Act strikes a balance between the property rights of copyright owners, and the expressive rights of the rest of the creative community, by permitting copyright suits only where “there is substantial similarity between the protected elements” of the two works. Benay v. Warner Bros. Entm’t, Inc., 607 F.3d 620, 624 (9th Cir.2010). Here, Montz attempts to use an implied contract claim to do what the Copyright Act does (i.e., to protect the unauthorized use of copyrighted materials). The only difference is that Montz’s implied contract claim would protect those rights more broadly because California implied contract law does not require as strict a showing of substantial similarity as federal copyright law. See Benay, 607 F.3d at 631. But the “fact that the state-created right is ... broader ... than its federal counterpart will not save it from pre-emption.” 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 1.01[B][1] (rev. ed. 2010).
II
Montz’s breach-of-confidence claim also asserts rights equivalent to the rights protected by the Copyright Act. The complaint states that “the Plaintiffs’ disclosure of their ideas and concepts [was] strictly confidential,” and that “[b]y taking the Plaintiffs’ novel ideas and concepts, exploiting those ideas and concepts, and profiting therefrom to the Plaintiffs’ exclusion, the Defendants breached their confidential relationship with the Plaintiffs.” Such claim simply echoes the allegations of the breach-of-implied-contract claim. Indeed, the alleged breach-of-confidence stems from the alleged violation of the very rights contained in section 106' — the exclusive rights of copyright owners to use and to authorize use of their work.
The majority relies on two elements to distinguish the rights asserted in Montz’s breach-of-confidence claim from the rights protected by the Copyright Act. First, the breach-of-confidence claim requires Montz to show that Pilgrim disclosed confidential material (i.e., the ideas embodied in *986 Montz’s materials) to third parties. Maj. op. at 981-82. But a copyright affords its owner the same right: the right against unauthorized disclosure of copyrighted work. See Laws, 448 F.3d at 1137. Second, the breach-of-eonfidence claim requires that Montz show Pilgrim breached a confidential relationship or entrustment. Maj. op. at 981-82. Yet a breach of a relationship of trust does not, by itself, transform the nature of an action. See Del Madera Props., 820 F.2d at 977 (noting that the breach of a fiduciary duty “does not add any ‘extra element’ which changes the nature of the action”). The breach-of-confidence claim still asserts rights protected by the Copyright Act; the only difference is that the rights are asserted against a particular person (i.e., someone with whom the copyright holder had a confidential relationship). But the right against unauthorized disclosure of copyrighted work already applies against everyone, regardless of whether one had a confidential relationship with the copyright holder.
Because Montz’s breach-of-confidence claim is not qualitatively different from a copyright claim, it is preempted.
Ill
Montz does not allege that he sold the ideas embodied in his Ghost Hunters materials to Pilgrim and that Pilgrim simply failed to make good on its promise to pay. Instead, he alleges that Pilgrim used the ideas embodied in Montz’s copyrighted material without his permission. Because the Copyright Act protects such equivalent rights, I respectfully dissent.

. Although the allegations specific to Montz’s breach-of-implied-contract claim refer only to “ideas” and "concepts” — which in the abstract are not subject to copyright protection, see 17 U.S.C. § 102(b) — it is clear from the complaint that Montz presented his "ideas” and "concepts” through television screenplay treatments, video, and other ancillary preproduction materials. Such materials qualify for copyright protection under section 102(a) as "original works of authorship fixed in [a] tangible medium of expression.” Accordingly, the district court and the majority are correct that the rights asserted under Montz's breach-of-implied-contract claim "come within the subject matter of copyright” as described in section 102.

. Indeed, the majority apparently reads Montz's complaint as alleging that he authorized Pilgrim to use his idea so long as it paid him a share of the profits. See Maj. op. at 977 ("Montz ... has alleged he revealed his concept to defendants reasonably expecting to be compensated, if his concept was used.”); id. (stating that use of Montz's idea was conditioned “on the granting of a partnership interest in the proceeds of the production”); cf. id., at 977. (implying that Montz's idea was submitted "with the understanding that if the script is used, the producer must compensate” him). These statements overlook the fact that Montz did not just want money; he wanted to be involved in the show’s production. And he presumably was not going to authorize Pilgrim to use his idea unless this condition was met.

. Montz argues that, at the very least, this Court should remand with instructions to *985 grant leave to amend the complaint so that Montz can assert a breach-of-implied-contract claim that accords with Grosso. But the only way to cure the complaint would be to allege that Montz authorized Pilgrim to use his work in exchange for a promise to pay for it. Such allegation would be inconsistent with the present complaint which states, emphatically, that Montz did not sell his work to Pilgrim, but rather that Pilgrim promised not to use Montz's ideas "without [his] express consent.” Accordingly, it would be inappropriate to remand this case to allow for amendment. See Albrecht v. Lund, 845 F.2d 193, 195 (9th Cir. 1988) (noting that dismissal without leave to amend is proper where the "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency” (internal quotation marks omitted)).