**NO DOUBT, a California Partnership,**
**Plaintiff,**

v.

**ACTIVISION PUBLISHING, INC.,**
**a Delaware Corporation,**
**Defendant.**

No. CV 09–8872 SVW (VBKx).

United States District Court,
C.D. California.

Jan. 14, 2010.

Bert H. Deixler, Gil Nathan Peles, Proskauer Rose LLP, Los Angeles, CA, for Plaintiff.

Michael T. Zeller, Quinn Emanuel Urquhart Oliver & Hedges LLP, Los Angeles, CA, for Defendant.

ORDER GRANTING PLAINTIFF'S EX PARTE APPLICATION TO RE-MAND [8] AND REMANDING CASE TO LOS ANGELES COUNTY SUPERIOR COURT

STEPHEN V. WILSON, District Judge.

## I. Introduction

Plaintiff filed a Complaint against Defendant in state court. Defendant removed the case to federal court, arguing that Plaintiff's Complaint is preempted by the Copyright Act. Plaintiff filed an ex parte application to remand the case to state court. For the following reasons, the Court grants Plaintiff's application and remands the case to state court.

## II. Facts

The following facts are taken from Plaintiff's complaint, which for present purposes must be taken as true. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir.1987); *see also Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir.2009).

Plaintiff No Doubt is a music group. Defendant Activision Publishing, Inc. is a video game manufacturer. On May 21, 2009, Plaintiff and Defendant entered into a contract whereby Plaintiff licensed Defendant a specific, limited and restricted use of Plaintiff's name, likeness, and musical works in Defendant's new video game, *Band Hero*. Under the agreement, Plaintiff permitted Defendant to create animated character representations, or "avatars," of Plaintiff's likeness for the limited purpose of allowing the characters to perform three of Plaintiff's own musical works. Plaintiff asserts that the Agreement contained express limitations on Defendant's uses of Plaintiff's likeness, and that any other use of Plaintiff's likeness would be subject to Plaintiff's approval.

According to the Complaint, Defendant created in *Band Hero* the ability to have lifelike embodiments of Plaintiff and its individual band members sing, dance and perform over sixty songs that were neither contracted for nor approved of, and have never been performed, by Plaintiff. Plaintiff asserts Defendant hired actors to impersonate Plaintiff and enable the No Doubt avatar characters to perform these sixty plus unapproved songs.

The video game includes a Character Manipulation Feature that allows game-players to manipulate each character's likeness to engage in unapproved acts with other characters included in the game. This feature allows users to cause members of No Doubt to perform vocally as soloists without their band members, including having male members sing with female voices. Plaintiff argues that the Agreement only allowed the use of Plaintiff's name and likeness as a collective

group, and not as solo artists. Plaintiff further asserts that it never agreed to allow the use of its name and likeness for the Character Manipulation Feature of *Band Hero*.

On November 4, 2009, Plaintiff filed a Complaint alleging six causes of action in state court: (1) fraudulent inducement; (2) violation of California Civil Code § 3344 and common law right of publicity; (3) breach of contract; (4) unfair business practices; (5) injunctive relief; and (6) rescission.

Defendant filed a timely notice of removal under 28 U.S.C. § 1441(b) asserting that one or more of Plaintiff's claim arise under federal law. Plaintiff then filed an ex parte Application to Remand on the ground that its claims do not arise under federal law. Plaintiff's application to remand is the subject of the present order.

In seeking to remand the case, Plaintiff asserts that it does not contest Defendant's copyright in the licensed use. Rather, Plaintiff argues that its claims cannot be preempted by the Copyright Act because they arise only from the misappropriation of Plaintiff's name and likeness in violation of the agreement. Plaintiff further asserts that its request for injunctive relief does not cause its claims to be preempted because the request for an injunction does not change the nature of Plaintiff's claims.

Defendant asserts that the Copyright Act preempts Plaintiff's claim because *Band Hero* and in-game avatars fall within the subject matter of the Copyright Act and that Plaintiff's publicity and unfair competition claims also fall within the scope of the Copyright Act.

## III. Legal Standards

### A. Removal

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States." 28 U.S.C. § 1441(a). If the federal courts lack subject matter over the action, the case must be remanded to the state court from which it was removed. 28 U.S.C. § 1447(c).

The Ninth Circuit has expressed a "strong presumption against removal." *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir.1992). The removing party bears the burden of establishing that removal was appropriate, and "the removal statute is strictly construed against removal jurisdiction." *Nishimoto v. Federman–Bachrach & Assoc.*, 903 F.2d 709, 712 (9th Cir.1990). Federal courts must remand the case "if there is any doubt as to the right of removal." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992) (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir.1979)).

### B. Federal Jurisdiction

In the present case, removal is premised on both the general federal question statute, 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," as well as the statute governing jurisdiction over copyright claims, 28 U.S.C. § 1338, which provides that "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to ... copyrights." Section 1338 further provides that "[s]uch jurisdiction shall be exclusive of the states in ... copyright cases."

"The presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on

the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). To determine whether removal was appropriate, the court must focus on the plaintiff's complaint: "[j]urisdiction may not be sustained on a theory that the plaintiff has not advanced." *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 810, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). The well-pleaded complaint rule "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* (citing *Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716 (1913)). This rule limits the removal of cases where state law "creates the cause of action," and thus avoids "a number of potentially serious federal-state conflicts." *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9–10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

 Ordinarily, a defense based on federal preemption of a state law cause of action is a matter that can be addressed in state court. Preemption defenses do not give rise to federal question jurisdiction under 28 U.S.C. § 1331, and thus do not provide removal jurisdiction under 28 U.S.C. § 1441. *See Louisville & Nashville Railroad Co. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908) (anticipation of federal defenses is not a sufficient basis for federal question jurisdiction). However, in certain situations, the doctrine of "complete preemption" provides that state-law causes of action are federal causes of action in sum and substance, and accordingly arise under federal law for purposes of 28 U.S.C. § 1331. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *see also Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003) ("[A] state claim may be removed to federal court in only two circumstances—

when Congress expressly so provides, ... or when a federal statute wholly displaces the state-law cause of action through complete pre-emption.").

For purposes of the present motion, the Court will assume without deciding that copyright preemption is "complete pre-emption" permitting removal of preempted state-law claims. *Accord Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296 (2d Cir.2004), *cert. denied*, 544 U.S. 949, 125 S.Ct. 1704, 161 L.Ed.2d 525 (2005); *Worth v. Universal Pictures, Inc.*, 5 F.Supp.2d 816 (C.D.Cal.1997); *Dielsi v. Falk*, 916 F.Supp. 985 (C.D.Cal.1996).

## C. Copyright Preemption

Section 301(a) of the Copyright Act preempts "all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106" and "in works of authorship that ... come within the subject matter of copyright as specified by sections 102 and 103." 17 U.S.C. § 301(a). Section 301(b) clarifies that "Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to ... subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103." *Id.* at § 301(b). Congress has explained that "[t]he intention of section 301 is to preempt and abolish any rights under the common law or statutes of a State that are equivalent to copyright and that extend to works within the scope of the Federal copyright law." *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1137 (9th Cir.2006) (quoting H.R.Rep. No. 94–1476, at 130 (1976)).

The Ninth Circuit applies a two-part test to determine whether a state law claim is preempted by § 301 of the Copyright Act:

We must first determine whether the "subject matter" of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103. Second, assuming that it does, we must determine whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders.

*Id.* at 1137–38 (internal footnotes omitted) (citing *Downing v. Abercrombie & Fitch,* 265 F.3d 994, 1003 (9th Cir.2001)). Both prongs of this test must be satisfied in order for the state-law claim to be preempted. *Downing,* 265 F.3d at 1003.

A number of cases have examined the relationship between copyright preemption and state-law rights of publicity. A handful of particularly relevant cases provide the guideposts for deciding the present case.

The most relevant example is the Ninth Circuit's most recent case on the subject, *Laws v. Sony Music Ent., Inc.,* 448 F.3d 1134 (9th Cir.2006). The plaintiff Debra Laws had entered into a recording agreement with Elektra Records. *Id.* at 1136. Under the recording contract, Laws gave Elektra the exclusive right to copyright the recordings, the exclusive right to lease the recordings, and the right to use Laws's name and likeness in connection with the recordings. *Id.* Laws reserved the right to reject Elektra's uses in connection with "the sale, advertising or promotion of any other product or service." *Id.*

Pursuant to the agreement, Laws recorded the song "Very Special" and Elektra retained the copyright in the recording. *Id.* Over twenty years later, Sony (the defendant in Laws's lawsuit) obtained a license to sample "Very Special" in a Jennifer Lopez song, which ultimately became a hit single. *Id.* Laws was credited but never compensated for the sample, which she had never authorized. *Id.* Laws filed a complaint against Sony alleging that Sony's use of her song violated her rights to her voice, name, and likeness under California's statutory (Cal. Civ.Code § 3344) and common law rights of publicity. *Id.*

The Ninth Circuit held that Laws's claims were preempted because they fell within the scope of the federal copyright laws. *Id.* at 1139. Laws did not dispute that the song was copyrighted or that it was "fixed in a tangible medium of expression." *Id.* at 1141. The Court found that Laws' case was not based on her voice alone, which is "more personal," but rather on the sampling of her performance in the copyrighted song. *Id.* The Court noted that it is "clear that federal copyright law preempts a claim alleging misappropriation of one's voice when the entirety of the allegedly misappropriated vocal performance is contained within a copyrighted medium." *Id.* at 1141. The copyrighted song included her voice; there was no right of publicity severable from the vocal performance. *Id.* at 1143.

In a discussion that is particularly relevant to the present action, the Ninth Circuit explained:

> The essence of Laws's claim is, simply, that she objects to having a sample of "Very Special" used in the Jennifer Lopez–L.L. Cool J recording. But Laws gave up the right to reproduce her voice—at least insofar as it is incorporated in a recording of "Very Special"—when she contracted with Elektra in 1981 and acknowledged that Elektra held the "sole and exclusive right to copyright such master recordings," including the right "to lease, license, convey or otherwise use or dispose of such master recordings." At that point, Laws could have either retained the copyright, or reserved contractual rights in Elektra's use of the recording.

Indeed, Laws claims that the latter is precisely what she did. But if Elektra licensed "Very Special" to Sony in violation of its contract with Laws, *her remedy sounds in contract against Elektra, not in tort against Sony.*

*Id.* at 1144 (emphasis added).

In its conclusion, the Ninth Circuit again emphasized the relevance of the potential breach-of-contract claim against the recording company:

Elektra copyrighted Laws's performance of "Very Special" and licensed its use to Sony. If Laws wished to retain control of her performance, she should (and may) have either retained the copyright or contracted with the copyright holder, Elektra, to give her control over its licensing. In any event, her remedy, if any, lies in an action against Elektra, not Sony.

*Id.* at 1145.

The precise holding of *Laws* is better understood in light of *Fleet v. CBS, Inc.,* 50 Cal.App.4th 1911, 58 Cal.Rptr.2d 645 (1996), which the *Laws* court found "quite persuasive." 448 F.3d at 1142. In *Fleet,* the plaintiffs were actors; the defendant, CBS, owned the copyright to a film in which they performed. 50 Cal.App.4th at 1916, 58 Cal.Rptr.2d 645. Notably, the actors' "performances in the film were recorded with their active participation and consent." *Id.* at 1920 n. 5, 58 Cal.Rptr.2d 645. But after a pay dispute, the actors filed a claim for misappropriation of likeness and violation of their rights of publicity. *Id.* at 1915, 58 Cal.Rptr.2d 645.

The court held that the actors' claim fell within copyright subject matter. *Id.* at 1920, 58 Cal.Rptr.2d 645. The court reasoned that once the performances were put on film with the actors' consent, they were "fixed in a tangible medium of expression" that fulfilled the requirements of section 102 of the Copyright Act. *Id.* at 1919, 58 Cal.Rptr.2d 645. The actors' performances were part of the copyrighted material, and the actors' likenesses could not be detached from the copyrighted performances that were contained in the film. The court concluded that the actors' case "crumbles in the face of one obvious fact: their individual performances in the film ... were copyrightable." *Id.* at 1919, 58 Cal.Rptr.2d 645. As a result, the court held that their claims were preempted: "A claim asserted to prevent nothing more than the reproduction, performance, distribution, or display of a dramatic performance captured on film is subsumed by copyright law and preempted." *Id.* at 1924, 58 Cal.Rptr.2d 645.

*Laws* and *Fleet* stand for the following proposition: federal law preempts state-law right of publicity claims where the claims are based on the claimant's *copyrightable* activities that are captured in a copyrighted work. *Fleet* involved actors who had performed in a film—that is, a "dramatic work" "fixed in a tangible medium of expression" within the meaning of the Copyright Act. *Laws* involved a singer who had performed in a music recording—that is, a "sound recording" "fixed in a tangible medium of expression" within the meaning of the Copyright Act.

In contrast, where the plaintiff's claims are based on a non-copyrightable personal attribute rather than a copyrightable performance, the Copyright Act does not preempt the claims.

The best example of this principle is the Ninth Circuit's controlling authority of *Downing v. Abercrombie & Fitch,* 265 F.3d 994 (9th Cir.2001). In *Downing,* the clothing retailer Abercrombie & Fitch purchased a photograph of appellant surfers at a 1965 surfing competition from a photographer, who owned the copyright. *Id.* at 1000. Abercrombie & Fitch then published the photo in their catalogue, with appellants' names but without appellants'

permission. *Id.* at 1000. The surfers filed state misappropriation claims. *Id.* Abercrombie & Fitch argued, as Defendant does now, that the Copyright Act preempted the state law claims. *Id.* at 1003.

The Ninth Circuit held that the claims were not preempted because the subject matter of the publicity claims was the appellants' names and likenesses, which is not a work of authorship within Section 102 of the Copyright Act. *Id.* at 1004. The Court reasoned that while the photograph falls within copyright subject matter, "it is not the publication of the photograph itself, as a creative work of authorship, that is the basis for Appellants' claims, but rather, it is the use of the Appellants' likenesses and their names pictured in the published photograph." *Id.* at 1003. The subject matter of a right to publicity claim is "the very identity or persona of the plaintiff as a human being." *Id.* at 1004 (citing McCarthy, *Rights of Publicity and Privacy* § 11.13[C] at 11–72–73 (1997)). The subject matter of a right to publicity claim is the name or likeness, which "does not become a work of authorship simply because it is embodied in a copyrightable work." *Id.* at 1003-4 (citing *Nimmer on Copyright* § 1.01[B][1][c] at 1–23 (1999)).

## IV. Discussion

Applying the Ninth Circuit's two-part copyright preemption test to Plaintiffs' claims, it is clear that Plaintiff's claims are not preempted. As explained by the Ninth Circuit:

> We must first determine whether the "subject matter" of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103. Second, assuming that it does, we must determine whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C.

§ 106, which articulates the exclusive rights of copyright holders.

*Laws,* 448 F.3d at 1137–38.

■ First, Plaintiffs' rights do not fall within the subject matter of copyright. In this case, in contrast to *Laws* and *Fleet,* the object that is "fixed in a tangible medium of expression" is the physical likeness and persona of the Plaintiffs. Name, likeness, and persona are not copyrightable subject matter, both under the Copyright Act and the Copyright Clause of the Constitution, because a name, likeness, or persona is not a work of "authorship" entitled to copyright protection. *See Downing,* 265 F.3d at 1003–05; *see also Toney v. L'Oreal USA, Inc.,* 406 F.3d 905 (7th Cir.2005) (holding no preemption where photo model asserted right of publicity claim against photo copyright holder).

It is true that Defendant's *videogame* is a work of authorship entitled to copyright protection, *see Midway Mfg. Co. v. Artic Intern., Inc.,* 704 F.2d 1009, 1012 (7th Cir. 1983), and that the musicians' *songs* incorporated into Defendant's videogame are copyrightable. *See* 17 U.S.C. §§ 102(a)(2),(7) (listing "musical works" and "sound recordings" as copyrightable works of authorship). Further, live musical recordings that are captured on videotape are also copyrightable. *See, e.g., Armstrong v. Eagle Rock Ent., Inc.,* 655 F.Supp.2d 779, 788–90 (E.D.Mich.2009) (musician's publicity and appropriation claims against music video distributor preempted by Copyright Act where case involved live musical performance recorded on videotape); *see also* 17 U.S.C. § 102(a)(6) (listing "motion pictures and other audiovisual works" as copyrightable works of authorship). Thus, if Plaintiff were suing on the basis of Defendant's misuse of Plaintiff's songs or videotaped musical performance, its claims would be preempted by the Copyright Act. *See, e.g.,*

*Laws,* 448 F.3d at 1138–43. The same result would occur if Plaintiff were claiming a right in the entire videogame as infringing a similar work of Plaintiff's own authorship. *See, e.g., M. Kramer Mfg. Co., Inc. v. Andrews,* 783 F.2d 421, 445–46 (4th Cir.1986).

However, Plaintiff does not allege that Defendant misused Plaintiff's copyrighted songs or copyrightable musical performances. Plaintiff alleges that the contents of Defendant's videogame infringes Plaintiff's rights under the parties' contract and under state publicity laws. Specifically, Plaintiff asserts that Defendant's videogame contains cartoon likenesses that resemble Plaintiff. *See Kirby v. Sega of America, Inc.,* 144 Cal.App.4th 47, 55–57, 50 Cal.Rptr.3d 607 (2006) (video game character that resembled plaintiff potentially infringed plaintiff's likeness and identity); *see also Wendt v. Host Intern., Inc.,* 125 F.3d 806, 810–12 (9th Cir.1997) (robot look-alike misappropriated plaintiff's identity); *White v. Samsung Electronics America, Inc.,* 971 F.2d 1395, 1397–99 (9th Cir.1992) (same); *Newcombe v. Adolf Coors Co.,* 157 F.3d 686, 692–94 (9th Cir.1998) (cartoon likeness of baseball player potentially infringed rights of publicity); *Cardtoons, L.C. v. Major League Baseball Players Ass'n,* 95 F.3d 959, 967–68 (10th Cir.1996) (same).

Even more specifically, Plaintiff asserts that Plaintiff consented to Defendant's use of Plaintiff's name, image, and likeness in the videogame, but only within the well-defined parameters laid out in the parties' contract. Defendant's videogame then included Plaintiff's name, image, and likeness in a manner that was outside the scope of Plaintiff's contractual consent.

This case is exactly what the *Laws* court had in mind when it suggested that Debra Laws might have a valid cause of action against Elektra Records (with whom she had entered into a recording contract), but not against Sony Records (which had obtained from Elektra licenses to use Laws's songs). The court clearly counseled that artists and entertainers should proceed *exactly as Plaintiff has proceeded in this case:*

> If Laws wished to retain control of her performance, she should (and may) have either retained the copyright or contracted with the copyright holder, Elektra, to give her control over its licensing.

*Laws,* 448 F.3d at 1145. The court added:

> But if Elektra licensed "Very Special" to Sony in violation of its contract with Laws, her remedy sounds in contract against Elektra, not in tort against Sony.

*Id.* at 1144. Laws's right-of-publicity claims against the copyright licensee were preempted by the Copyright Act; but Laws's claims against the *party with whom she contracted* would not be preempted.

Here, Plaintiff contracted with the videogame's copyright holder (that is, Defendant) so that the copyright holder would only engage in certain activities. Plaintiff carefully controlled the rights it was allowing Defendant to incorporate into the videogame. Subsequently, Defendant engaged in certain other activities that were not contractually permissible. Thus Plaintiff has a valid breach of contract cause of action. Further, Defendant's alleged breach of contract involved Defendant's impermissible use of Plaintiff name, image, and likeness. Thus Plaintiff also has a valid tort cause of action for violation of Plaintiff's right of publicity. *Accord Facenda v. N.F.L. Films, Inc.,* 542 F.3d 1007, 1031–32 (3d Cir.2008) (sportscaster's breach of contract and right of publicity claims not preempted by copyright where sportscaster's contract allowed defendant to use sportscaster's voice recordings in context of sports broadcasts, not in context

of television advertisements for video-game).

In short, the rights asserted by Plaintiff are not copyrightable, *see Downing*, 265 F.3d at 1003–04, and Plaintiff did not agree to Defendant's incorporation of Plaintiff's name, likeness, or image into Defendant's copyrighted work in the manner that Defendant did so, *cf. Fleet*, 50 Cal.App.4th at 1919, 58 Cal.Rptr.2d 645. Accordingly, Plaintiff's tort and contract claims are not preempted by the Copyright Act.

## V. Conclusion

Plaintiff's claims are not preempted by the Copyright Act. To the extent that the Court's legal conclusion is even debatable, the Court emphasizes the federal courts' "strong presumption against removal." *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir.1992), which counsels that federal courts should remand cases "if there is any doubt as to the right of removal." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)). Because Defendant's removal involved a relatively novel issue and was not plainly frivolous, Plaintiff's request for costs and fees is denied. *See Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065–66 (9th Cir.2008).

For the reasons stated above, the Court lacks subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338. The Court ORDERS that the action be REMANDED to state court pursuant to 28 U.S.C. § 1447(c).

IT IS SO ORDERED.