**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JULES JORDAN VIDEO, INC., a
California corporation; ASHLEY
GASPER, an individual,
           *Plaintiffs-Appellees,*

                v.

144942 CANADA INC., a Canadian
corporation d/b/a KAYTEL VIDEO
DISTRIBUTION; ALAIN ELMALEH, an
individual; LEISURE TIME VIDEO
CANADA, INC., a Canadian
corporation,
           *Defendants-Appellants,*

                and

JACKY'S ONE STOP DISTRIBUTION,
INC., a Canadian corporation;
JACKY ELKESLASSY, an individual;
SYLHET DISTRIBUTION, INC., a
Canadian corporation; GERALD
OUZZAN, an individual,
           *Defendants.*

No. 08-55075

D.C. No.
CV-05-06771-SJO

11705

JULES JORDAN VIDEO, INC., a
California corporation; ASHLEY
GASPER, an individual,
            *Plaintiffs-Appellants,*

                v.

144942 CANADA INC., a Canadian
corporation d/b/a KAYTEL VIDEO
DISTRIBUTION; ALAIN ELMALEH, an
individual; LEISURE TIME VIDEO
CANADA, INC., a Canadian
corporation,
            *Defendants-Appellees,*

                and

JACKY'S ONE STOP DISTRIBUTION,
INC., a Canadian corporation;
JACKY ELKESLASSY, an individual;
SYLHET DISTRIBUTION, INC., a
Canadian corporation; GERALD
OUZZAN, an individual,
            *Defendants.*

No. 08-55126

D.C. No.
CV-05-06771-SJO

OPINION

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted
March 2, 2010—Pasadena, California

Filed August 16, 2010

Before: Alex Kozinski, Chief Judge, William A. Fletcher,
Circuit Judge, and Robert W. Gettleman,*
Senior District Judge.

Opinion by Judge Gettleman

---

*The Honorable Robert W. Gettleman, United States District Judge for
the Northern District of Illinois, sitting by designation.

COUNSEL

Michael M. Plotkin (argued), Law Offices of Michael M. Plotkin, Los Angeles, California, Charles M. Coate, Costa, Abrams & Coate, LLP, Santa Monica, California, for the appellants.

Jens Koepke (argued), Greines, Martin, Stein & Richland LLP, Los Angeles, California, Mark J. Poster, Sheila A. Wirkus, Greines, Martin, Stein & Richland, LLP, Los Angeles, California, for the appellees.

OPINION

GETTLEMAN, Senior District Judge:

Ashley Gasper is an adult movie actor who performs under the stage name Jules Jordan, and is the president and sole

shareholder of Jules Jordan Video ("JJV"), the creator of the videos in which Gasper appears. He and his company sued defendants 144942 Canada, Inc., d/b/a Kaytel Video Distribution ("Kaytel"), Leisure Time Video Canada, Inc. ("Leisure Time"), Alain Elmaleh, the principal shareholder of each of the corporate defendants (collectively the "Kaytel defendants"), Jacky's One Stop and the other defendants named in this consolidated appeal. Gasper alleged that the Kaytel defendants had copied and sold thirteen copyrighted adult DVDs owned by JJV or Gasper and featuring Gasper's performances (the "JJV action"). The complaint alleged claims for copyright infringement, contributory copyright infringement, violation of unfair business practice, unfair competition under California law, false and misleading advertising, and violation of Gasper's right of publicity. The claims for unfair business practices and false advertising were dismissed prior to trial, leaving only the claims for copyright infringement based on the replication and distribution of the thirteen DVDs, and the claim for violation of Gasper's right of publicity under California law.

After a lengthy and contentious trial, the jury returned a verdict for plaintiffs on both issues.[1] After the verdict the court granted the Kaytel defendants' motion for judgment as a matter of law ("JMOL") in part, concluding that neither Gasper nor JJV had standing to assert the copyright claims, and denied plaintiffs' motion for JMOL. The court rejected the Kaytel defendants' claim that Gasper's right of publicity claim was preempted by copyright law. Both parties have appealed. We disagree with the district court on both issues, concluding that Gasper's right of publicity claim is preempted by the Copyright Act, but that Gasper and JJV had standing to assert the copyright claims in question.

---

[1]The JSI action also involved claims for trademark violations. After trial JSI settled with the Kaytel defendants.

## FACTS AND PROCEDURAL HISTORY

Both Gasper and Stagliano are adult film performers of some stature. Stagliano's company, JSI, distributed the works of many producers including Stagliano and Gasper, under the brand names Evil Angel and Evil Empire. Gasper started making adult films in 1994. He produces, directs and performs in his films under the stage name Jules Jordan. He also writes the scripts and films the scenes. JJV, which he formed in 2001, is basically a one-man shop with Gasper as the president and sole shareholder. During the period in question, he received from JJV a $6,000 monthly salary and year-end bonuses based on company income.

In 2001 Gasper agreed with Stagliano that JSI would distribute the Jules Jordan films in the United States, but Gasper retained ownership of the copyright. JSI prepared Gasper's copyright registration paperwork. In 2006 Gasper and JJV ended their relationship with JSI and began to distribute their own movies.

Elmaleh is the sole or majority shareholder in all of the Kaytel companies, and formed 2918919 Canada, Inc. as a Canadian holding company that owns both Kaytel Video Distribution and Leisure Time, major adult entertainment distributors in the Canadian market. Elmaleh also owned a number of retail adult entertainment stores in Canada. He controlled all of the Kaytel defendant entities, and at least some of the employees were shared among the companies.

In spring 2005, JSI began receiving a higher than normal rate of return of Jules Jordan videos. Upon review of the returned merchandise, Gasper learned that the returns were "counterfeit" copies of his DVDs. The counterfeit works were inferior and were replicated and compressed to fit on a smaller DVD, reducing the quality of the video.

Gasper and JSI discovered that Kaytel used Media Mastering Services to produce unauthorized masters of a number of

JSI titles, including the 13 JJV titles involved in the instant case. Using replication broker Gerald Ouzzan and his company Sylnet, Kaytel contracted with Diadem Digital to replicate thousands of copies of the counterfeit DVDs. Elmaleh, individually and on behalf of Kaytel, signed documents representing that they owned the rights to the DVDs. One of Kaytel's employees, Jacky Elkeslassy, formed a Canadian company called Jacky's One Stop, that sold the copied DVDs to distributors, primarily Direct Distributors in New York ("Direct"). Although the sales were ostensibly between Direct and Jacky's One Stop, Direct dealt exclusively with Elmaleh and sent payments to Kaytel. Direct distributed the counterfeit DVDs throughout the United States.

Gasper and JJV sued. On the same day that Gasper filed suit, a companion case, *John Stagliano, Inc. v. Alain Elmaleh, et al.* (the "JSI action"), was filed, also alleging that the Kaytel defendants had replicated and distributed a number of Stagliano's copyrighted DVDs without license or authority.

The two cases, along with a third case brought by JJV against Canadian Multimedia Entertainment, Inc. (the "CME action"), were all originally assigned to Judge Matthew Byrne, whose untimely death resulted in reassignment to Judge Dickran Tevrizian. Judge Tevrizian consolidated the cases for discovery but retired from the bench prior to the trial. The cases were then reassigned to Judge S. James Otero, who consolidated the three cases for all purposes including trial. Prior to the trial, the plaintiffs settled with and dismissed their claims against Elmaleh, Gerald Ouzzan and Sylnet Distributors, Inc. Just before trial the CME action settled, leaving only the JJV and JSI actions against the Kaytel defendants to be tried. The plaintiffs in both cases settled with Media Mastering Services, Diaden, Sylnet, Elkeslassy and Jacky and Direct in exchange for monthly payments and promises to provide documentation and testimony. JSI settled with Kaytel after trial.

The JJV action went to trial on the two remaining issues, copyright infringement and violation of Gasper's right of publicity under California law. The jury found that all three defendants infringed Gasper's/JJV's copyrights, awarding $30,000 in statutory damages for each of the thirteen DVDs against Kaytel, $30,000 for each DVD against Leisure Time and $140,000 for each DVD against Elmaleh. The jury also found that defendants violated Gasper's right of publicity and awarded Gasper varying amounts in damages, lost profits and punitive damages against each defendant totaling just under $2.85 million, including $2.5 million in punitive damages.

Prior to trial, the Kaytel defendants had moved in limine to exclude evidence in support of Gasper and JJV's copyright claims, arguing that both Gasper and JJV lacked standing to assert any copyright infringement claim because the complaint alleged that Stagliano's company, EA Productions, had the "exclusive rights to manufacture and distribute Plaintiffs' copyrighted products . . . ." The district court denied the motion because the evidence could have been admissible if relevant to claims brought by other plaintiffs, but dismissed sua sponte JJV and Gasper's copyright infringement claims.

During a recess on the first day of trial the court granted plaintiffs' motion to reconsider and reinstated the copyright claims, concluding that JJV and Gasper could be "beneficial owners under their license agreement with JSI," and if so, would have standing under 17 U.S.C. § 501(b). The court's order specifically noted that defendants "may revisit the issue should Plaintiffs fail to perfect standing prior the close of Plaintiffs' cases in chief." Defendants attempted to raise the issue at the close of plaintiffs' case, but the court did not want to delay the trial and instructed defendants to file written motions that would be entertained at the appropriate time.

When the case was first reassigned to Judge Otero, he informed the parties both orally and in written orders that no dispositive motions were to be filed. Prior to trial defendants

moved in limine to preclude plaintiffs from introducing evidence in support of their common law claims and sought dismissal of those claims as preempted by the Copyright Act, 17 U.S.C. § 301. The court refused to exclude the evidence because "that evidence may be relevant to the federal law claims which supposedly pre-empt the common law claims." The court refused to consider the request to dismiss the common law claims because it had "already told the parties that it will not consider any further dispositive motions."

At the close of trial both parties moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50. Plaintiffs sought JMOL on the state law claims and the copyright infringement claims. Defendants' motion, on the other hand, sought JMOL on the copyright claim only, arguing that plaintiffs lacked standing. The court granted defendants' motion, concluding that because Gasper was employed by JJV the motion picture were works for hire under 17 U.S.C. § 101 and that JJV was the author, leaving Gasper without standing. The court also concluded that because the copyright registration in Gasper's name was invalid, JJV had no standing.

The court denied as moot plaintiffs' motion for JMOL in light of the subsequent jury verdict in favor of plaintiffs and the decision on defendants' motions. The court noted, however, that in response to plaintiffs' motion, defendants had argued that plaintiffs' California state law right of publicity claim was preempted by the Federal copyright claim. After indicating that defendants should have raised this issue in their own motion, the court analyzed the issue for the "sake of procedural clarity," concluding that the claim was not preempted and indicating that "[i]f Defendants moved to make this argument, such a Motion would be DENIED."

After entry of judgment, defendants moved pursuant to Fed. R. Civ. P. 59 for a new trial, arguing again that Gasper's state law claim was preempted by the Federal Copyright Act. The court denied that motion based on its earlier ruling.

## *ANALYSIS*

## I.

Defendants appeal from the district court's decision that Gasper's right of publicity claim under California Civil Code § 3344 was not preempted by the Copyright Act. We review de novo whether a federal law preempts a state law, as well as the district court's interpretation of state law. *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006).

**[1]** Congress enacted the Copyright Act, 17 U.S.C. § 101 et seq., to define and protect the rights of copyright holders. The Act provides that "the owner of copyright . . . has the exclusive rights to do and to authorize" others to display, perform, reproduce or distribute copies of the work and to prepare derivative works. 17 U.S.C. § 106. A copyright gives the owner the right to control the work.

**[2]** Section 301 of the Act provides for exclusive jurisdiction over rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified in the Act. "The intention of Section 301 is to preempt and abolish any rights under the common law or statutes of a State that are equivalent to copyright and that extend to works within the scope of Federal copyright law." H.R. Rep. No. 94-1476 at 130. In *Laws*, we stated that:

> We have adopted a two-part test to determine whether a state law claim is preempted by the Act. We must first determine whether the 'subject matter' of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103. Second, assuming that it does, we must determine whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders.

448 F.3d at 1137-1138.

**[3]** This court held that a claim under the California right of publicity statute, Cal. Civil Code § 3344, based on an allegedly unauthorized publication of a musical recording was preempted by the Copyright Act. The court noted that Section 102 of the Act extends copyright protection to "original works or authorship fixed in any tangible medium of expression from which they can be reproduced," and that a work is "fixed" in a tangible medium "when its embodiment in a copy or phono record, by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." *Id.* at 1139 (quoting 17 U.S.C. § 101).

Laws was a recording artist who had entered into a recording agreement with Elektra Records to produce master recordings of her vocal performances for Elektra. The agreement gave Elektra "sole and exclusive right to copyright such master recordings." *Id.* at 1136. Elektra granted Sony a non-exclusive license to use a sample of one of Laws recordings in a Sony recording by Jennifer Lopez and LL Cool J. Laws sued Sony claiming that the use of her voice on the Sony recording was a misappropriation of her right of publicity under California Civil Code § 3344(a). We applied the two part test and found that Laws' master recordings were plainly original works of authorship fixed in a tangible medium of expression capable of reproduction. Thus, the master recordings were within the "subject matter" of copyright. *Id.* at 1139.

Despite that obvious conclusion, Laws argued that the subject matter of a copyright claim and a right of publicity claim are substantively different because the copyright claim protects ownership rights to a work of art, while a right of publicity claim concerns the right to protect one's persona and likeness. Thus, Laws contended (unsuccessfully) that her right

of publicity claim was based on an "unauthorized duplication of her vocal performance," not the duplication of the master recording itself. *Id.* at 1141.

**[4]** Gasper makes the same contention in the instant case, arguing that the Kaytel defendants misappropriated his name and "persona," in addition to his "dramatic performance." We reject this argument for the same reason we rejected it in *Laws.*

> Although California law recognizes an ascertainable interest in the publicity associated with one's voice, we think it is clear that federal copyright law pre-empts a claim alleging misappropriation of one's voice when the entirety of the allegedly misappropriated vocal performance is contained within a copyrighted medium.

*Id.* at 1141.

Gasper's claim that the Kaytel defendants misappropriated his name and persona is based entirely on the misappropriation of the DVDs and Gasper's performance therein. Indeed, the complaint alleged that "Defendants have wilfully and systematically infringed Plaintiffs' copyrights and rights or publicity (directly and by assignment) by the repeated unauthorized reproduction, counterfeiting, and sale of such counterfeit copies of Plaintiffs' copyrighted works to third parties." In the amended Pre-Trial Conference Order Gasper again listed the evidence in support of his right of publicity claim as "Mr. Gasper's name, likeness, photograph and voice appear in the counterfeit Gasper Films without his authorization." Thus, throughout the litigation Gasper has claimed that the factual basis of his right of publicity claim was the unauthorized reproduction of his performance on the DVDs.

On appeal he now argues, apparently for the first time, that it is the use of his name and likeness on the covers of the

counterfeit DVDs that violated his right of publicity. But Gasper's face appears nowhere on any of the DVD covers, and whether his "persona" appears in the form of some other part of his anatomy is unknown. What is known from the exhibits introduced at trial is that the pictures on the covers of the DVDs are "still shots" of the copyrighted video performance. Thus, Gasper's argument that his right of publicity was violated by defendants' reproduction of the covers is misguided.[2]

In the district court, the Kaytel defendants relied on *Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911 (1996), a case we cited with approval in *Laws*. In *Fleet* the court rejected claims very similar to those Gasper asserts in the instant case:

> In this case we are asked to decide a very narrow issue: whether an actor may bring an action for misappropriation of his or her name, image, likeness or identity under Section 3344 of the Civil Code when the only alleged exploitation occurred through the distribution of the actor's performance in a motion picture. The trial court concluded that to the extent California law would permit such a claim, it was preempted by federal copyright law. We agree with the trial court and affirm.

*Id.* at 1913

In rejecting the Kaytel defendants' position, the district court relied on *KNB Enters. v. Matthews*, 78 Cal. App. 4th 362 (2000), which read *Fleet* narrowly and held that the right of publicity is preempted by the Copyright Act only when the

---

[2]Even if we were to accept Gasper's argument, the covers of the DVDs are likely component parts of the copyrighted DVD. *See* 1-2 Nimmer on Copyright § 2.04; *Triangle Publ'ns, Inc. v. Knight-Ridder Newspapers, Inc.*, 445 F. Supp. 875 (S.D. Fla. 1978) (cover considered copyrightable component part and copyright of underlying work extends to cover).

distribution is made by the exclusive copyright holder. The *KNB* court stated:

> Accordingly, we would limit *Fleet*'s broad language regarding preemption of the actors' Section 3344 claims to the unique facts of that case. In our view, a Section 3344 claim is preempted under *Fleet* where an actor or model with no copyright interest in the work seeks to prevent the exclusive copyright holder from displaying the copyrighted work. We do not believe a Section 3344 claims is preempted under *Fleet* where, as here, the defendant has no legal right to publish the copyrighted work.

*Id*. at 374.

Because the Kaytel defendants had no legal right to distribute the DVDs the district court concluded that "Defendants did not have federal rights which could preempt Plaintiffs' state law rights. Thus Plaintiffs' state law claims are not preempted by federal copyright law."

**[5]** We do not read *Fleet* or the Copyright Act so narrowly. Whether a claim is preempted under Section 301 does not turn on what rights the alleged infringer possesses, but on whether the rights asserted by the plaintiff are equivalent to any of the exclusive rights within the general scope of the copyright. The question is whether the rights are works of authorship fixed in a tangible medium of expression and come within the subject matter of the Copyright Act. If a plaintiff asserts a claim that is the equivalent of a claim for infringement of a copyrightable work, that claim is preempted, regardless of what legal rights the defendant might have acquired.

**[6]** In the instant case, we conclude that Gasper's right of publicity claim falls within the subject matter of copyright, and that the rights he asserts are equivalent to the rights within the scope of § 106 of the Copyright Act. The essence

of Gasper's claim is that the Kaytel defendants reproduced and distributed the DVDs without authorization. His claim is under the Copyright Act. Accordingly, we reverse the district court and vacate Gasper's judgment against the Kaytel defendants for violation of his right of publicity under California law.[3]

## II.

After the jury returned its verdict in favor of plaintiffs on their copyright infringement claim, the district court granted defendants' motion JMOL. The court held that because Gasper was employed by JJV, the motion picture works were "works for hire" under the Copyright Act, 17 U.S.C. § 101. Therefore, JJV, not Gasper, was the author of the works and Gasper lacked standing. The court implicitly held that JJV lacked standing because the registration was invalid. Plaintiffs have appealed that decision, arguing that it is both legally erroneous, inequitable and illogical given that only Gasper or JJV could possibly own the copyrights and both were plaintiffs in the action. We agree.

[7] A district court can set aside a jury verdict and grant JMOL "only if, under governing law, there can be but one reasonable conclusion as to the verdict" and "only if 'there is no legally sufficient basis for a reasonable jury to find for that party on that issue." *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001) (citations and quotations omitted). We review de novo whether the films were works for hire. *Aymes v. Bonelli*, 980 F.2d 857, 861 (2d Cir. 1992).

The Copyright Act, 17 U.S.C. § 101, defines a work made for hire as:

---

[3]Because we vacate the damages award on the right of publicity claim, we need not examine appellants' argument that there was not enough evidence to support the verdict or that the award wasn't property apportioned.

(1) a work prepared by an employee within the scope of his or her employment; or

(2) a work specially ordered or commissioned for use as a contribution to a collective work, as part of a motion picture or other audio visual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the works shall be considered a work made for hire.

**[8]** The district court correctly concluded that the films could not be considered works for hire under § 101(2) because there was no written instrument. Thus, if Gasper's creative work was performed as an independent contractor, he would be considered the author.

It was undisputed, however, that Gasper was an employee of JJV, at least for some purposes, leaving the question of whether his "creative work" was within the scope of his employment. The district court concluded that it was rejecting as "concocted at trial" Gasper's testimony that he always intended that his "creative work" be kept separate from his work for JJV and that he would have ownership of the copyrights. The court made its own factual findings that "JJV intended he would hold the camera, light the set, write the screenplay, produce and direct."

The problem with the district court's analysis is that JJV was a one-man shop. Gasper was the sole officer, director, and shareholder of JJV, exercised complete control over it, and made all decisions concerning JJV and production of the films. It was all Gasper all the time. JJV as employer and Gasper as employee could certainly agree as to the scope of the employee's employment, and could agree that Gasper should retain all copyrights. Since JJV was Gasper, JJV

intended whatever Gasper intended, and if Gasper intended that his creative work be outside the scope of his employment with JJV, there was no one to disagree. *See*, *e.g.*, *M&A Assocs., Inc. v. VCX, Inc.*, 657 F. Supp. 454, 459-60 (E.D. Mich. 1987) (sole shareholder, director and officer of corporation that produced film was owner of the copyright).

Perhaps more importantly, even if the films were works for hire, the district court was correct that Gasper simply made a "mistake in listing himself as the author" on the copyright registration forms. That mistake does not constitute a basis to invalidate the copyright. " '[I]nadvertent mistakes on registration certificates do not invalidate a copyright and thus do not bar infringement actions, unless . . . the alleged infringer has relied to its detriment on the mistake, or the claimant intended to defraud the Copyright Office by making the misstatement.' " *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1145 (9th Cir. 2003) (quoting *Urantia Found. v. Maaherra*, 114 F.3d 955, 963 (9th Cir. 1997)).

Defendants obviously did not rely on the mistake (if there was one) to their detriment. The evidence presented demonstrates that they pirated the DVDs without a care to whether the DVDs were copyrighted and, if so, who owned the copyright. Nor did Gasper or JJV ever intend to defraud the Copyright Office. The typical work for hire dispute involves a disagreement between the commissioning party or employer and the commissioned party or employee over who owns the copyright. *See*, *e.g.*, *Cmty. For Creative Non-Violence v. Reed*, 490 U.S. 730, 733-736 (1989). In the instant case, the only two parties with any possible claim to ownership, JJV and Gasper, both believed and intended that Gasper own the copyright.

Indeed, there was no need to defraud anyone with respect to ownership. If Gasper had really believed that JJV owned the copyright, as defendants argue on appeal, he had no need to lie on the registration forms. If he knew that JJV was the

owner and wanted to own them himself, he needed only to transfer them to himself from JJV. Copyrights, like any other property right, can be transferred by any means of conveyance. 17 U.S.C. § 201(d)(1). A simple written note or memorandum of transfer signed by himself on behalf of JJV would have been sufficient, 17 U.S.C. § 204(a), and an earlier oral assignment can be confirmed later in a writing. *Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 591 (7th Cir. 2003). Corporations cannot literally discuss anything. *Id.* Only Gasper could have had discussions on behalf of JJV, and he consistently testified that he and JJV intended that he be the owner of the copyrights. If, as defendants argue, he honestly knew that he had not effectively achieved ownership, he could have at anytime simply memorialized that intent in writing. He had no reason to defraud the Copyright Office or concoct a story for purposes of this litigation.

Thus, had Gasper's testimony been sufficient to support an oral agreement between JJV and himself that any copyright technically owned by JJV was to be conveyed to him, defendants would have had no standing to complain that the agreement was never put in writing. Section 204(a) is designed to resolve disputes between owners and transferees and to protect copyright holders from persons mistakenly or fraudulently claiming oral licenses or copyright ownership. *Billy-Bob Teeth*, 329 F.3d. at 592. When there is no dispute between the copyright owner and transferee, " 'it would be unusual and unwarranted to permit a third-party infringer to invoke § 204(a) to avoid suit for copyright infringement.' " *Id.* (quoting *Imperial Residential Designs, Inc. v. Palms Dev. Group, Inc.*, 70 F.3d 96, 99 (11th Cir. 1995)).

**[9]** Although § 101 is not a statute of frauds section as is § 204, the reasoning of *Imperial Residential Designs* is nonetheless applicable. As noted above, § 101 is designed to establish ownership of a work as between a commissioning party or employer on the one hand and the commissioned party or employee on the other. It would be unusual and unwarranted

to permit third parties such as the instant defendants to invoke § 101 to avoid a suit for infringement when there is no dispute between the two potential owners, and both are plaintiffs to the lawsuit. Accordingly, we conclude that the district court erred in holding that the motion pictures were works for hire, and reverse the court's grant of defendants' motion JMOL invalidating the jury's verdict of infringement.

### III.

The jury awarded JJV and Gasper statutory damages for copyright infringement in the amounts of $390,000 against Kaytel Distribution, $390,000 against Leisure Time and $1.82 million against Elmaleh. Having determined that the trial court erred in granting defendants' motion JMOL, we must decide whether the verdict should be reinstated or whether the trial was so tainted by error that reinstatement would be unfair. On appeal, defendants challenge several rulings on these issues: (A) the district court's handling of certain requests for admissions; and (B) the court's submitting to the jury an allegedly confusing and misleading special verdict form.

**A.** Defendants argue that the district court erred by permitting JSI's counsel to read to the jury 716 requests for admissions ("RFAs") as facts that had been admitted by Kaytel Distribution. Early in the discovery phase of the JSI action, pursuant to Fed. R. Civ. P. 36, JSI served Kaytel Distribution with 716 separate RFAs. The RFAs were addressed to and served only on Kaytel Distribution and related only to the JSI action. Under the Rule, Kaytel Distribution had 30 days to respond or the RFAs would be deemed admitted. Fed. R. Civ. P. 36(a)(3). On June 9, 2006, prior to the expiration of the 30 days, JSI requested and received entry of default against Kaytel Distribution for failure to answer the first amended complaint.

The Kaytel defendants dismissed their counsel, and on August 4, 2006, their new counsel appeared in each of the

consolidated cases and then moved to vacate the default in the JSI action. The court granted the motion over plaintiffs' objection but ordered Kaytel Distribution to pay $18,683.90 in attorney's fees. Within four days after the default was vacated, Kaytel Distribution moved for leave to respond to the RFAs, which had become due while it was in default. Judge Tevrizian denied that motion without hearing.

After the case was reassigned to Judge Otero, the Kaytel defendants moved in limine to exclude the introduction of the "admissions," arguing that because the court had entered default against Kaytel Distribution before any response to the RFAs was due, Kaytel Distribution could not respond to the RFAs until the default was vacated. Judge Otero denied this motion, stating that "defendants cite several cases which hold that requests for admissions may not be served after entry of a party's default, but no authority for the idea that default status absolves the responsibility to respond to a request for admission served *before* entry of default." (Emphasis in original).

At trial, the court permitted JSI counsel's to read all 716 RFAs to the jury. By way of explanation, the court told the jury:

> Prior to trial, there is discovery that each side is allowed to accomplish. One form of discovery is requests for admissions. Requests for admissions are documents sent to the opposing party requiring the party to either admit or deny the truth of facts asserted in the request for admissions.
>
> In this case, the plaintiffs served Kaytel with requests for admissions. Kaytel responded that those facts that have just been referenced are, in fact, true. They are binding only as to Kaytel.

In a sidebar, defendants' counsel objected to the court's statement that Kaytel had responded that the facts were true

rather than telling the jury that they were deemed admissions. The court rejected defendants' objection and refused to clarify its statement to the jury. As part of the final instructions, however, it did instruct the jury that:

> The cases presented to you have been consolidated for trial. Certain evidence was admitted and limited to one or more parties. Do not consider it as to any other party. Your attention was called to those matters when the evidence was admitted.

> Certain facts have been introduced to you which have been characterized as having been conclusively admitted by Kaytel Distribution, Inc. You must treat these facts as admitted by Kaytel Distribution and only Kaytel Distribution.

> Further, you are considering two consolidated cases, one in which John Stagliano, Inc. is the plaintiff and the other in which Mr. Ashley Gasper and Jules Jordan Video, Inc. are the plaintiffs.

> Admissions in one case are not applicable to the other.

On appeal, the Kaytel defendants argue that the court erred when it: (1) held that Kaytel Distribution was deemed to have admitted the RFAs; (2) denied Kaytel Distribution leave to withdraw the deemed admissions; and (3) advised the jury that Kaytel Distribution had expressly admitted the RFAs. This court reviews de novo the district court's interpretation of the Federal Rules of Civil Procedure. *United States v. Clifford Matley Family Trust*, 354 F.3d 1154, 1159 n.4 (9th Cir. 2004). We review the denial of a motion to withdraw an admission for an abuse of discretion. *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995).

**[10]** The Federal Rules of Civil Procedure distinguish between parties and non-parties in establishing available dis-

covery devices. Some rules, such as Rule 36, permit discovery only from a party, while others permit discovery from non-parties, but may impose additional burdens. For example, under Rule 30 any person's testimony may be taken by deposition. If a person is a party, a simple notice of deposition is sufficient to compel attendance, while a non-party's attendance can be compelled only by subpoena. *See Blazek v. Capital Recovery Assocs., Inc.*, 222 F.R.D. 360, 361 (W.D. Wisc. 2004) (citing *In re Liu*, 282 B.R. 904, 908 (C.D. Ca. 2002)).

**[11]** The rules do not indicate into which category a defaulted defendant falls, and there is little guidance in the case law. We agree with the *Blazek* court's analysis, however, that a defaulted defendant should be treated as a non-party. As the court in *Blazek* noted, a defaulted defendant loses many of the rights of a party, chief among them the right to contest the factual allegations of the complaint. *Id*. A defaulted defendant cannot answer the complaint unless and until the default is vacated. It stands to reason that if a defaulted defendant cannot answer allegations of the complaint, it also cannot respond to requests for admissions, at least until the default is vacated. Therefore, we agree with the Kaytel defendants that the trial court erred in deeming the requests admitted for failing to respond when Kaytel Distribution was prevented from responding by the court's entry of default. We also agree that the court abused its discretion when, after vacating the default, it refused to give Kaytel Distribution time to respond.

We do not agree with the Kaytel defendants, however, that the court's error in allowing counsel to read the RFAs to the jury requires a new trial, because we conclude that the error did not affect the defendants' substantial rights. When reviewing the effect of an erroneous evidentiary ruling, we begin with a presumption of prejudice. "That presumption can be rebutted by a showing that it is more probable than not that the jury would have reached the same verdict even if the evidence had [not] been admitted." *Obrey v. Johnson*, 400 F.3d 691, 701 (9th Cir. 2005).

**[12]** Applying this standard to the instant case, we conclude that the presumption of prejudice has been rebutted and that it is more probable than not that the jury would have reached the same verdict. We come to this conclusion for two reasons. First, the evidence was admitted in the JSI action only, and the jury was properly and specifically instructed that the admissions in the RFAs entered into evidence in one case were not to be considered in the other case. There is a strong presumption that juries follow curative instructions. *See Doe ex. rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1270 (9th Cir. 2000). We see nothing in the record to conclude that the jury failed to follow these instructions.

Second, although the admissions in the JSI action were damaging as to Kaytel Distribution as well as other defendants, their exclusion from the trial would not have helped the Kaytel defendants in the JJV action. This is because plaintiffs in that action read to the jury 99 equally damaging deemed admissions that defendants do not and cannot challenge on appeal. Like JSI, Gasper and JJV served Kaytel Distributions with RFAs early in the proceedings. Responses to these RFAs were due before Kaytel Distribution was in default, yet it never responded to them and never moved to withdraw the deemed admissions. They were admitted at trial without objection. These admissions include that Kaytel Distribution formed Jacky's One Stop, created copies of the 13 films without license to do so, used Elmaleh's cellular phone to sell counterfeit DVDs, and invoiced sales of those counterfeit DVDs through Jacky's One Stop. These 99 admissions, alone, are sufficient to support the verdict.

**[13]** We conclude, therefore, that the inclusion of the evidence did not taint the jury's verdict. Because we must presume that the jury followed the court's instructions, and given the extent of the admissions properly entered into evidence in the JJV action, it is more probable than not that the jury would have reached the same verdict.

**B.** Defendants also contend that the district court erred by submitting to the jury a "confusing and misleading" special verdict form that was 31 pages long containing 170 separate questions. We have reviewed the form and, although it is indeed lengthy, we do not find it particularly confusing. The length stems from the number of plaintiffs and defendants, and the form required the jury to determine whether each defendant infringed each of the thirteen DVD titles involved in the case. The verdict form provided a roadmap for that determination, and we do not see any objection by defendants to that roadmap other than a general objection to the use of a special verdict form.

At the instruction conference, defendants offered an alternate verdict form that tracked the language of the form ultimately used, but had additional questions related to ownership of the copyrights. When the court inquired as to the necessity of such instructions, defense counsel indicated that there were "meaningful issues in the case as to who is in fact the owner or exclusive licensee." When the court asked if that was not "essentially a legal issue for the court to determine," defense counsel indicated that he had no problem with submitting the issue to the court on post-trial motions. That is precisely what happened.

On appeal, defendants complain that the verdict form asked the jury, "[i]s Kaytel directly, vicariously or contributorily liable for infringement of copyrights owned or exclusively licensed by plaintiffs," without providing a method for the jury to delineate whether the infringement was direct, vicarious or contributory. Thus, the defendants argue that the jury could have concluded that defendants vicariously infringed, which according to them was never an issue in the case.

As noted, the only issue raised by defendants at the final conference was the issue of ownership. The special verdict form offered by defendants tracked the language in the form ultimately given. The record does not reveal any alternate

form offered by defendants separating the three bases for infringement. Thus, absent an objection and alternative form, defendants failed to properly object at trial under Fed. R. Civ. P. 51, and the issue is not preserved for review by this court. Nor is there anything to suggest that any specific objection, as opposed to a general objection to a special verdict form, would have been futile or a "pointless formality," based on previous court rulings. Thus, defendants cannot rely on *Monroe v. City of Phoenix, Arizona*, 248 F.3d 851, 858 (9th Cir. 2001), which indicates that an objection may be a pointless formality when, (1) throughout the trial the party argued the disputed matter with the court, (2) it is clear from the record that the court knew the party's grounds for disagreement with the instruction, and (3) the party offered an alternative instruction.

**[14]** Accordingly, we reject defendants' contention that the district court erred by submitting the special verdict form to the jury. The form fully and fairly presented to the jury the issues it was called upon to decide and afforded defendants adequate opportunity to present their case. *United States v. 20832 Big Rock Drive*, 51 F.3d 1402, 1408 (9th Cir. 1995).

## *CONCLUSION*

**[15]** For all the foregoing reasons the decision of the district court is REVERSED. The jury verdict in Gasper's favor on his right of publicity claim and California Civil Code § 3344 is VACATED. The jury verdict in favor of JJV and Gasper based on copyright infringement is REINSTATED. We REMAND for proceedings consistent with this opinion. The parties shall bear their own costs. *See* Fed. R. App. P. 39(a)(4).