NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAY 19 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

CARLOS L. LOPEZ Sr. and JUANITA S. LOPEZ, individually and as successors-in-interest to Carlos S. Lopez II,

Plaintiffs - Appellants,

v.

UNITED STATES OF AMERICA,

Defendant – Appellee.

No. 24-5529

D.C. No. 2:21-cv-10036-MRW

MEMORANDUM*

Appeal from the United States District Court
for the Central District of California
Michael R. Wilner, Magistrate Judge, Presiding

Argued and Submitted April 24, 2026
Pasadena, California

Before: FRIEDLAND and MILLER, Circuit Judges, and TRAUM, District Judge.**

Carlos S. Lopez II joined the United States Army in 2003, served three tours

of duty in the Middle East, and was honorably discharged in 2009. During his

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Anne R. Traum, United States District Judge for the District of Nevada, sitting by designation.

service, Lopez saw combat and sustained a traumatic brain injury. After his discharge, Lopez moved to Los Angeles and received medical care from the Department of Veterans Affairs. In May 2018, VA doctors prescribed Lopez gabapentin, an anticonvulsant, to treat back pain. A few weeks later, Lopez sought care from a VA walk-in clinic in downtown Los Angeles, reporting frequent nightmares that he had trouble distinguishing from reality, difficulty sleeping, and recurring thoughts that he was a "bad person" who was "capable of doing awful things." Lopez, who suffered from service-related post-traumatic stress disorder, committed suicide five days later. His parents, Carlos and Juanita Lopez, sued the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b)(1), alleging professional negligence on the part of VA staff. After a three-day bench trial, the district court rejected plaintiffs' claims. Plaintiffs appeal. We have jurisdiction under 28 U.S.C. § 1291, and we review the district court's conclusions of law de novo and its factual findings for clear error. *Montana v. Talen Mont., LLC*, 130 F.4th 675, 686 (9th Cir. 2025). We affirm.

1. The district court applied the appropriate standard of care. The FTCA waives the sovereign immunity of the United States for tort claims based on "personal injury or death caused by the negligent or wrongful act or omission" of federal employees acting within the scope of their employment. 28 U.S.C.

24-5529

§ 1346(b)(1). FTCA claims are governed by the law of the State where the act or omission occurred. *Id.* § 2674.

California law requires medical providers to exercise the "degree of skill, knowledge, and care ordinarily possessed and exercised by members of their profession under similar circumstances." *Barris v. County of Los Angeles*, 972 P.2d 966, 971 n.1 (Cal. 1999) (quoting *Alef v. Alta Bates Hosp.*, 6 Cal. Rptr. 2d 900, 904 (Ct. App. 1992)). A physician breaches this duty if his actions deviate from "the standard of care that his peers consider appropriate in the situation." *Burgess v. Superior Court*, 831 P.2d 1197, 1206 (Cal. 1992) (quoting Paul C. Weiler, *Medical Malpractice on Trial* 25 (1991)). The standard of care in a medical malpractice action "is a matter peculiarly within the knowledge of experts" and typically can be proved only by expert testimony. *Flowers v. Torrance Mem'l Hosp. Med. Ctr.*, 884 P.2d 142, 147 (Cal. 1994).

Plaintiffs presented expert testimony from Dr. Howard Greils, a psychiatrist, who concluded that the VA providers breached the standard of care. Dr. Greils testified to the standard of care for physicians prescribing gabapentin to patients with a history of mental health problems, as well as the standard of care for psychologists encountering a patient at a mental health clinic who reports symptoms similar to Lopez's. The district court discounted Dr. Greils's testimony

because he is not a practicing neurologist and his proposed standard of care was not tailored to the walk-in clinic practice setting.

Plaintiffs argue that the district court erred by failing to apply a heightened standard of care to VA medical staff. Plaintiffs reason that, because veterans are at higher risk for suicide, VA doctors should be held to a higher standard of care in evaluating and responding to risks of suicide. But plaintiffs identify no testimony from Dr. Greils or any other witnesses that would support a heightened standard of care for medical professionals who treat veterans. Dr. Greils testified that the VA providers should have paid more attention to risk factors specific to Lopez, but he never suggested that a higher standard of care applies to the VA patient population in general. Without expert evidence supporting the standard of care they propose, plaintiffs cannot show that the district court erred.

To the extent plaintiffs separately argue that the district court failed to consider the "similar circumstances" element of the standard of care and that this was a legal error, they mischaracterize as legal an issue that is really factual. Under California law, the "formulation of the standard of care is a question of law for the court," but "[o]nce the court has formulated the standard, its application to the facts of the case is a task for the trier of fact if reasonable minds might differ as to whether the defendant's conduct has conformed to the standard." *Ramirez v. Plough, Inc.*, 863 P.2d 167, 171 (Cal. 1993). Dr. Greils's testimony that a

reasonable doctor would have reacted differently to a patient in Lopez's situation presented a factual question about whether the VA's conduct conformed to the standard of care. Plaintiffs have not established that the district court clearly erred in rejecting that factual contention.

2. The district court did not clearly err by crediting the testimony of defense witnesses. A reviewing court "must give due regard to the trial court's opportunity to judge the witnesses' credibility." Fed. R. Civ. P. 52(a)(6). We may reverse a district court's factual findings only when they are "illogical or implausible" or without "support in inferences that may be drawn from the facts in the record." *Anderson v. Bessemer City*, 470 U.S. 564, 577 (1985). If a witness's story is "coherent and facially plausible," the trial court's decision to credit that testimony "can virtually never be clear error" unless the testimony is "contradicted by extrinsic evidence." *Id.* at 575.

The district court credited testimony from Lopez's treating neurologists that they had a practice of discussing potential side effects of medications and likely discussed the potential side effects of gabapentin with Lopez. Plaintiffs point out that the neurologists did not document this conversation in their notes, despite previously documenting conversations about the side effects of other medications. Although that omission could perhaps have supported a finding that the

neurologists' testimony was not credible, it does not contradict that plausible testimony and thus does not establish the district court clearly erred.

Nor did the district court err in relying in part on the similarity of the warning the neurologists described and warnings the judge had previously heard from medical professionals. In a bench trial, the district court serves as the factfinder, a role that "necessarily relies on experience" to evaluate witness credibility. *Grotemeyer v. Hickman*, 393 F.3d 871, 879 (9th Cir. 2004). And the district court did not err in crediting the testimony of the VA psychologist, which was corroborated by both her contemporaneous notes and the notes of a primary care nurse.

3. Plaintiffs challenge the district court's decision not to strike the testimony of the government's expert psychiatrist. The district court did not cite or otherwise indicate that it relied on that testimony in its findings and conclusions, instead relying on the testimony of other witnesses. Therefore, even if the district court erred, it is "more probable than not that the [court] would have reached the same verdict even if the evidence had [not] been admitted," so any error in admitting the testimony was harmless. *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1159 (9th Cir. 2010) (second alteration in original) (quoting *Obrey v. Johnson*, 400 F.3d 691, 701 (9th Cir. 2005)).

4. The district court did not abuse its discretion in preventing plaintiffs from attempting to impeach the VA psychologist with her deposition testimony. A district court is afforded a "high degree of flexibility" in evaluating whether trial testimony is inconsistent with a witness's prior statements. *United States v. Shuemake*, 124 F.4th 1174, 1177 (9th Cir. 2024) (quoting *United States v. Morgan*, 555 F.2d 238, 242 (9th Cir. 1977)). The court reasonably found that the psychologist's trial testimony was not inconsistent with her deposition testimony.

5. The district court did not abuse its discretion by asking plaintiffs' counsel to explain the relevance of certain lines of questioning during cross-examination. District courts have broad discretion to "exercise reasonable control over the mode and order of examining witnesses." Fed. R. Evid. 611(a); *see Geders v. United States*, 425 U.S. 80, 87 (1976). Particularly in a bench trial, the district court's questioning fell well within its discretion.

**AFFIRMED.**